In the Matter of the Arbitration Between UNIVERSITY OF HAWAII PROFESSIONAL ASSEMBLY, on behalf of ALICE DAEUFER, Plaintiff-Appellant, *v.* UNIVERSITY OF HAWAII, Defendant-Appellee

NO. 8085

(S. P. NO. 5228)

FEBRUARY 18, 1983

LUM, J., RETIRED JUSTICE MARUMOTO, IN PLACE OF NAKAMURA, J., RECUSED, AND RETIRED JUSTICES OGATA AND MENOR, ASSIGNED BY REASON OF VACANCIES*

---

* Chief Justice Richardson, who heard oral argument in this case, retired from the court on December 30, 1982. HRS § 602-10 (1982 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

*Per Curiam.* This is the second case we decide today involving arbitration disputes at the University of Hawaii. For the reasons expressed below, we hold that although it is within an arbitrator's power to grant tenure and back pay to a grievant, a rehearing by the arbitrator is needed in this case to determine whether the appointing University officials' decision was arbitrary or capricious.

I.

Alice Daeufer, an Assistant Specialist in the College of Continuing Education and Community Service, applied for tenure on November 14, 1977. Both the Director of Extended Programs (Daeufer's Department Chairman) and the Department Personnel Committee recommended that she be granted tenure. Her tenure application was also approved by the Dean of the College of Continuing Education and Community Service, and the Tenure Personnel Review Committee. While her application was being reviewed by the Manoa Chancellor's Office, however, the Director and the Dean jointly retracted their prior recommendations and recommended that tenure be denied. Their stated reason was that there had been a continued decline in the program Daeufer administered, and thus there was no long term need for her services. Based on these recommendations, the Chancellor recommended that tenure not be granted. Tenure was denied Alice Daeufer by the President of the University, acting on behalf of the Board of Regents.

On May 31, 1978, Daeufer filed a grievance pursuant to Article XII of the then effective Collective Bargaining Agreement (July 1977 to June 1979). The dispute having not been resolved at the first levels for settling grievances, it was submitted to arbitration.

The arbitrator rendered his Decision and Award on July 11, 1980. He found that the actions of the Director and the

Dean had been "arbitrary or capricious" within the meaning of Article XII (C)(1)(b) of the Agreement. Specifically, the arbitrator found that the reasons given by the Director and the Dean for their joint retraction were "unsupportable," since they knew of the conditions for tenure in Daeufer's field when they originally recommended tenure some five months earlier. Additionally, the Director himself had found the grievant to be "outstanding" even *after* he had retracted his earlier recommendation, an assessment with which the department and tenure committees concurred. In short, the arbitrator determined that the reasons for the retraction and ultimate denial of tenure "appear to be contrived," a determination not without support from the record before us.

The arbitrator awarded tenure to Alice Daeufer retroactive to July 1, 1978, and also ordered that she be given back pay from the same date.

On July 14, 1980, the University of Hawaii Professional Assembly (UHPA), on behalf of Alice Daeufer, filed a Motion to Confirm Arbitration Award. Shortly thereafter the University filed a Motion to Vacate Arbitration Award. On September 29, 1980, the trial court entered an order vacating the arbitration award to the extent that it granted tenure and back pay to the grievant. The court found that "under the statutes and constitution of Hawaii, the power to tenure faculty is exclusively reposed in the Board of Regents." Accordingly, the court ordered that the grievant's dossier be returned to the Chancellor for reconsideration.

II.

We held earlier today in *University of Hawaii Professional Assembly v. University of Hawaii,* 66 Haw. 207, 659 P.2d 717 (1983), that disputes involving tenure and promotion are arbitrable matters. Indeed, the principal issue before the arbitrator in the instant case was whether the University's denial of tenure to grievant Alice Daeufer was arbitrary or capricious. Since this issue was submitted jointly by both the University and UHPA, we have no problems in deciding at the outset that the arbitrator was empowered to hear this particu-

lar tenure grievance.

## A.

Proceeding on the premise that questions of tenure and promotion are arbitrable, we come to the issue most vociferously contested by the parties: whether the arbitrator had the power to actually grant tenure or promotion to the grievant.

We begin our discussion of this issue with the pertinent provision of the collective bargaining agreement. Article XII (C)(1)(b) of that agreement states in full:

> In any grievance involving the employment status of a Faculty Member, the Arbitrator shall not substitute his judgment for that of the official making such judgment unless he determines that the decision of the official is arbitrary or capricious.

UHPA argues that the intendment of this provision is clear: if the arbitrator finds the decision of the University official to have been arbitrary or capricious, he may substitute his judgment for that of the official. In this case, the arbitrator found that the denial of tenure to the grievant was based on arbitrary or capricious conduct on the part of the upper echelon University officials. He was thus within his powers as defined by the collective bargaining agreement to grant tenure to the grievant, Alice Daeufer.

We find this argument persuasive. In *In re Arbitration Between Local Union 1260 and Hawaiian Telephone Co.,* 49 Haw. 53, 411 P.2d 134 (1966), we refused to vacate an arbitrator's award which merely suspended the employee rather than discharging him as the employer wanted. We noted that no provision in the relevant collective bargaining agreement prohibited the arbitrator from modifying a disciplinary penalty, and concluded that "[w]here the basis of the arbitrator's award . . . could have rested on an interpretation and application of the agreement, there should be no 'second guessing' by the court." *Id.* at 56, 411 P.2d at 136 (citations omitted).

This case is a much stronger one for upholding the arbitrator's decision, since in contrast to the collective bargaining agreement in *Local Union 1260,* the one in the instant case expressly gave the arbitrator the right and power to "substitute

his judgment for that of the official" upon his finding that official's decision to be "arbitrary or capricious." *Compare, Truck Drivers & Helpers Union Local 784 v. Ulry-Talbert Co.,* 330 F.2d 562 (8th Cir. 1964) (arbitration award which reinstated employee was vacated on grounds that arbitrator exceeded his authority, since collective bargaining agreement stated that "arbitration board shall not substitute its judgment for that of the management *and shall only reverse the action or decision of the management* if it finds . . . that the management has acted arbitrarily and in bad faith" (emphasis added)).

In construing a contract, a court's principal objective is to ascertain and effectuate the intention of the parties as manifested by the contract in its entirety. *See, e.g., Kaiser Hawaii Kai Development Co. v. Murray,* 49 Haw. 214, 227-28, 412 P.2d 925, 932 (1966); *In re Taxes, Aiea Dairy, Ltd.,* 46 Haw. 292, 298, 380 P.2d 156, 160 (1963). If there is any doubt, the interpretation which "most reasonably reflects the intent of the parties" must be chosen. *Hawaii State Teachers Association v. Hawaii Public Employment Relations Board,* 60 Haw. 361, 368, 590 P.2d 993, 998 (1979). *Accord, Hawaiian Pineapple Co. v. Saito.,* 24 Haw. 787, 789 (1919). We note that, in addition to the clear and explicit language of Article XII (C)(1)(b) of the collective bargaining agreement, Article XII (C)(1) states: "The decision of the Arbitrator shall be final and binding upon the Assembly, its members, the Faculty Member(s) involved in the grievance, and the University." These provisions would be emaciated if the arbitrator's power were limited to simply remanding the matter to the appropriate officials for reconsideration. We do not believe this was the intention of the parties when they entered into their collective bargaining agreement and decided that arbitration would be the last step in the grievance process. The Board of Regents of the University of Hawaii voluntarily executed this agreement and undoubtedly received concessions from UHPA in exchange for consenting to the arbitration provisions. *See generally Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 248 (1970) ("a no-strike obligation, express or implied, is the *quid pro quo* for an undertaking by the employer to submit grievance disputes to the process of arbi-

tration"). We hold that the only fair, reasonable, and logical interpretation of the agreement's arbitration provisions is that espoused by UHPA: the arbitrator may grant tenure or promotion if he finds the University official's decision to have been arbitrary or capricious.

Indeed, the University does not proffer an alternative interpretation of the "substitution of judgment" clause in the agreement's arbitration section. Instead, it maintains that tenure is a matter vested exclusively within the province of the Board of Regents and cannot be resolved by an "unaccountable third party." In support of this position, the University cites Article IX, § 5 of the 1968 Hawaii Constitution, which gives the Board of Regents the power "to exercise control over the university through its executive officer, the president of the university . . . ."[1] Sections 304-3 and 304-4 of the Hawaii Revised Statutes likewise confer upon the Board the power to manage the general affairs of the University, and § 304-11 states that "[t]he board shall appoint . . . members of the faculty, . . . prescribe their salaries and terms of service. . . ."

We agree, and UHPA does not dispute, that these constitutional and statutory provisions make clear the Board of Regents has the ultimate power and, indeed, responsibility to formulate and oversee the major policies and practices of the University of Hawaii. This means the Board has exclusive jurisdiction over matters such as setting the criteria for determining tenure, promotion, and other areas of faculty employment, as well as establishing the procedure by which such matters are to be reviewed and grievances resolved. *See* HRS § 89-9(d)(7), *construed in University of Hawaii Professional Assembly v. University of Hawaii,* 66 Haw. at 211-12, 659 P.2d

---

[1] This section was renumbered and amended by the 1978 Constitutional Convention to include the quoted material with the additional proviso: "except that the board shall have exclusive jurisdiction over the internal organization and management of the university." Haw. Const. art. X, § 6. We do not believe this proviso has any effect on this or the other arbitration cases before us, however, since the purpose of the proviso was simply to insure that the "internal organization and management" of the University would not be subject to interference from the state executive or legislature. *See* Stand. Comm. Rep. No. 39, 1978 Haw. Const. Conv., at 590.

at 719-20. These provisions should not be read, however, to preclude the University from agreeing to submit tenure or promotion disputes to final and binding arbitration. *See University of Hawaii Professional Assembly v. University of Hawaii,* 66 Haw. at 212, 659 P.2d at 720. We now conclude that these provisions also do not prohibit the arbitrator, once he has received the grievance, from actually granting tenure or promotion upon a finding of arbitrary or capricious conduct on the part of University officials.

## B.

The doctrine of quasi estoppel provides a separate basis for ruling that the arbitrator was empowered to grant tenure to the grievant. A close cousin to the doctrine of equitable estoppel, quasi estoppel is grounded in the equitable principle that one should not be permitted to take a position inconsistent with a previous position if the result is to harm another. *See Godoy v. County of Hawaii,* 44 Haw. 312, 320, 354 P.2d 78, 82 (1960); *Munoz v. Ashford,* 40 Haw. 675, 688 (1955); *Yuen v. London Guarantee & Accident Co.,* 40 Haw. 213, 230 (1953); *Hartmann v. Bertelmann,* 39 Haw. 619, 628 (1952). Put in more colloquial terms: "[O]ne cannot blow both hot and cold." *Yuen v. London Guarantee & Accident Co.,* 40 Haw. at 230 (quoting *McDanels v. General Insurance Co.,* 1 Cal. App. 2d 454, 459, 36 P.2d 829, 832 (1934)). Yet from a review of the record in this and the other arbitration cases before us, that is precisely what the University did. After having contractually agreed that arbitration would be the last step in the grievance process and that the arbitrator's decisions would be "final and binding," and after agreeing to arbitrate these tenure and promotion disputes only to see the arbitration award go against it in each and every instance, the University now complains that the arbitrator never had the power to resolve these grievances in the first place.

We find this complaint untenable. The University could have either excluded subjects such as tenure and promotion from the agreement's arbitration provisions altogether, or it could have made clear, at the outset of the arbitration proceed-

ings, that it was not submitting to the arbitrator the power to actually grant tenure or promotion. At least in this case, it chose to do so neither, and the arbitrator proceeded to award tenure to the grievant. The result is that the grievant has been substantially disadvantaged in terms of time and money spent in the arbitration process and in litigation. Estoppel by any name is based primarily on considerations of justice and fair play, neither of which would be enhanced if the University were allowed to claim it had no idea what it was getting into when it agreed to arbitrate this grievance. We thus hold that the University is estopped from claiming the arbitrator was not empowered to grant tenure or promotion upon a finding of arbitrary or capricious conduct.

### C.

There is yet another basis for our decision today: public policy. The University argues that public policy, if anything, is strongly on its side; its main contention is that matters such as tenure and promotion are among the most critical responsibilities borne by the Board of Regents and simply cannot be delegated to anyone else, much less an "outsider" to the world of academia. In support of this position, the University cites a number of cases which have held that matters involving the employment status of faculty members are beyond the scope of the arbitrator's power since they are vested exclusively in the school board. *See, e.g., Pratt Institute v. Local 1460,* 103 LRRM 3031 (E.D.N.Y. 1980); *Board of Trustees v. Cook County College Teachers' Union,* 62 Ill. 2d 470, 343 N.E.2d 473 (1976); *Cohoes City School District v. Cohoes Teachers Association,* 40 N.Y.2d 774, 390 N.Y.S.2d 53, 358 N.E. 2d 878 (N.Y. 1976). None of these cases, however, involved the same statutes and, more critically, the same contract arbitration provisions, as those germane to this case. For example, in one of the cases most heavily relied on by the University, *Pratt Institute v. Local 1460, supra,* the collective bargaining agreement provided "that on all matters concerning reappointment, promotion and/or tenure, '[f]inal determination is by the expressed approval of the Board of Trustees.'" 103 LRRM at 3028. And although the agreement, like the one at issue here, did give the

arbitrator final and binding power to determine whether actions by University officials were arbitrary or capricious, it contained no language allowing for the arbitrator's "substitution of judgment" for that of such officials. *Id.*

Even if the cases cited by the University were more directly on point, however, we are not sure we would follow them. "As this court has noted, the proclaimed public policy of our legislature is to encourage arbitration as a means of settling differences and thereby avoid litigation." *Gregg Kendall & Associates, Inc. v. Kauhi,* 53 Haw. 88, 93, 488 P.2d 136, 141 (1971). *Accord: Loyalty Development Co. v. Wholesale Motors, Inc.,* 61 Haw. 483, 488, 605 P.2d 925, 928 (1980); *Leeward Bus Co. v. City & County of Honolulu,* 58 Haw. 64, 71, 564 P.2d 445, 449 (1977). No less an authority than the United States Supreme Court has spoken out very strongly in favor of arbitration. In *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* one of the "Steelworkers Trilogy," the Court declared:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.

363 U.S. 593, 597 (1960). The Court went on to caution that an arbitrator's award "is legitimate only so long as it draws its essence from the collective bargaining agreement," *id.*; that is exactly what happened in this case, however, where the agreement expressly allowed the arbitrator to "substitute his judgment for that of the official" if he found that official's decision to have been arbitrary or capricious.

Indeed, by giving the arbitrator the power to actually grant tenure or promotion, the collective bargaining agreement is made that much more meaningful, since "the confidence of the workers in the equity of the agreement is strengthened when they know that any dispute over the meaning of the contract may be submitted to an impartial third party for decision."

Note, *Legality and Propriety of Agreements to Arbitrate Major and Minor Disputes in Public Employment,* 54 Cornell L. Rev. 129, 135 (citing Wolf, *Grievance Procedures for School Employees,* in Employer-Employee Relations in the Public Schools 133, 137 (R. Doherty ed. 1967)). Moreover, a rule which allows tenure and promotion grievances to be reviewed and ultimately resolved by a neutral outside party would make the University more careful and selective in hiring employees, and also place pressure on both the University and the grievants to settle their disputes at lower levels. *Id.* at 135-36 (citing Wolf, *supra* at 138). The ultimate result is that the quality of the University faculty should improve and the grievance process would be given the substance and import it deserves. In the end, the University of Hawaii system as a whole is the beneficiary.

## IV.

### A.

Having concluded that the arbitrator is empowered to grant grievants tenure and promotion, the question becomes whether and to what extent arbitration awards can be judicially modified. At the outset, we begin with the unassailable proposition that judicial review in arbitration cases is strictly limited, since "extensive judicial review of arbitration awards would frustrate the intent of the parties to avoid litigation and would also nullify the legislative objective in the enactment of the Arbitration and Awards statute [HRS Ch. 658]." *Mars Constructors, Inc. v. Tropical Enterprises, Ltd.,* 51 Haw. 332, 335, 460 P.2d 317, 319 (1969). *See generally* Sigal, Public Employee Arbitration in Hawaii: A Study in Erosion, 2 U. Hawaii L. Rev. 477, 488 (noting that "any review of an [arbitration] award erodes the fundamental principle of finality — the very linchpin of the arbitral process").

We noted in *Mars Constructors* that only when one of the

grounds specified in HRS §§ 658-9[2] and 658-10[3] is met can an arbitrator's award be vacated or modified. 51 Haw. at 336, 460 P.2d at 319-20.[4] Thus, the fact that an arbitrator may err in applying the law, finding facts, or in construing the contract, or enters an award that is contrary to the evidence adduced, is insufficient grounds for judicial reversal. *See Kim v. Mel Cummins Building Contractor, Inc.,* 57 Haw. 186, 187-88, 552 P.2d 1117, 1118 (1976). As the United States Supreme Court has observed: "It is the arbitrator's construction which was

---

[2] § 658-9 Vacating award. In any of the following cases, the court may make an order vacating the award, upon the application of any party to the arbitration:

(1) Where the award was procured by corruption, fraud, or undue means;

(2) Where there was evident partiality or corruption in the arbitrators, or any of them;

(3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced;

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award, upon the subject matter submitted, was not made.

Where an award is vacated and the time, within which the agreement required the award to be made, has not expired, the court may in its discretion direct a rehearing by the arbitrators.

[3] § 658-10 Modifying or correcting award. In any of the following cases, the court may make an order modifying or correcting the award, upon the application of any party to the arbitration:

(1) Where there was an evident miscalculation of figures, or an evident mistake in the description of any person, thing, or property, referred to in the award;

(2) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted;

(3) Where the award is imperfect in a matter of form, not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof, and promote justice between the parties.

[4] The only possible specific provision of HRS §§ 658-9 and 658-10 which applies to this case is § 658-9(4), which states the arbitration awards may be vacated if "the arbitrators exceeded their powers . . . ." We have already held, however, that the language in the collective bargaining agreement gave the arbitrator the power to grant tenure to the grievant upon his finding the University officials' actions arbitrary or capricious.

bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. at 599.[5]

### B.

Of course, just as there are limits to judicial review of an arbitration award, so too must there be limits on an arbitrator's discretion in conducting the hearings and in making his decision. Implicit in the provisions of HRS §§ 658-9 and 658-10 is the fair and fitting limitation that the arbitrator himself cannot act in an arbitrary or capricious manner. Allowing such conduct can only denigrate the arbitration process and weaken its usefulness.

In this case, the record reflects that the arbitrator did not abuse his powers in finding that the Director and the Dean acted arbitrarily and capriciously in recommending that tenure be denied the grievant. His findings were based on proper criteria and entered only after extensive hearings, briefings, and deliberation were conducted.

---

[5] The University attempts to distinguish cases such as *Mars Constructors* and the "Steelworkers Trilogy" by pointing out these cases arose in the private sector, whereas the cases before us involve public sector disputes. It is the University's claim that public sector conflicts are of greater public concern and more likely to be governed by legislation; thus, judicial review of arbitration awards occurring in the public sector is not as limited as it is in private industry. We find nothing, however, in the language or legislative history of our Arbitration and Awards statute (HRS Ch. 658) to indicate that the decisions of arbitrators are to be treated any differently — *i.e.*, with any less judicial deference — simply because they arise in the public rather than the private sector. Moreover, the legislature specifically authorized the use of "final and binding arbitration" when it enacted HRS Ch. 89 ("Collective Bargaining in Public Employment"). And finally, as a matter of policy, we perceive no reason why the "public interest" is furthered by giving less weight to arbitration awards in the public, as opposed to the private, sector. As the Supreme Court of Pennsylvania has noted: "[T]he true public interest is the effective and efficient operation of public employment and . . . collective bargaining as well as managerial prerogatives are only significant insofar as they further this objective." *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 505-06, 337 A.2d 262, 267 (1975).

The record does not reflect, however, whether the appointed officials whose "judgment" was substituted for also acted in an arbitrary or capricious manner. The ultimate "appointing official" at the University is the Board of Regents, but normally tenure and promotion matters are left to the resolution of the President of the University. *Abramson v. Board of Regents, University of Hawaii,* 56 Haw. 680, 687-90 (1976). We note that in this case, the arbitrator apparently presumed that the President as well as the Chancellor served as mere "rubber stamps" for the lower echelon officials who recommended that tenure be denied the grievant. We cannot determine from the record before us if that is indeed what happened to the grievant's application; however, we believe that under ordinary circumstances the Chancellor and President are entitled to a presumption that they reviewed the applicant's dossier *in toto* and arrived at an independent and impartial decision.

Pursuant to the discretion given us in HRS § 658-9, we thus direct that the arbitrator rehear this matter in accordance with this opinion. If, upon rehearing, the arbitrator determines the appointing University officials acted arbitrarily and capriciously, he may "substitute his judgment" for that of such officials and award tenure and back pay to grievant Alice Daeufer from July 1, 1978.[6]

*Thomas P. Gill* (*Sara L. Smith* with him on the briefs; *Gill, Park, Park & Kim* of counsel; *Shirley Smith,* Co-Counsel) for plaintiff-appellant.

*Cynthia Winegar* and *Edward Yuen* (*Duff Zwald* on the brief), Deputy Attorneys General, for defendant-appellee.

---

[6] This is the date the grievant would have been granted tenure had the University so approved. We believe that it is only fair and logical that if the grievant is awarded tenure from a certain date, she should also receive the appropriate compensation from that same point in time. *Cf. Mogge v. District 8, International Association of Machinists,* 454 F.2d 510 (7th Cir. 1971) (affirming arbitrator's award of reinstatement and 100 weeks' back pay in wrongful discharge action); *Holly Sugar Corp. v. Distillery, Rectifying, Wine & Allied Workers International Union,* 412 F.2d 899 (9th Cir. 1969) (grievant awarded higher wage rate from date of hire).