**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 19 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CAROLE SCHUTTER, Personal
Representative of the Estate of Monte H.
Goldman, Deceased,

      Petitioner - Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent - Appellee.

No. 00-9000
(Tax No. 183-97)
(United States Tax Court)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Chief Judge; **PORFILIO**, Senior Circuit Judge; and **JENKINS**,
Senior District Judge.[**]

The single issue raised in this appeal is whether monthly payments to an ex-spouse

provided for in a property settlement agreement constitute a division of marital property

or alimony. If the former, as the Tax Court concluded, the Commissioner of Internal

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Bruce S. Jenkins, Senior District Judge for the United States
District Court for the District of Utah, sitting by designation.

Revenue (Commissioner) correctly denied their deduction and assessed deficiencies against the Estate of Monte H. Goldman (Taxpayer).  If the latter, alimony, as Taxpayer contends, the payments were properly deducted from Taxpayer's gross income, and the Commissioner erred in assessing the deficiencies.  Because the plain language of the property settlement agreement permits no other interpretation, we hold the payments represent a division of marital property, eluding their deduction under 26 U.S.C. § 215.

## I.  Background

Monte Goldman and Sally Parker, who were married in 1974, separated in 1983.  Ms. Parker filed a complaint for divorce in family court in Hawaii seeking dissolution of the marriage.  After entry of the final decree of divorce in August 1985, the parties executed a Property Settlement Agreement (Agreement).  Section 2, entitled Disposition of Marital Property and Separate Property, harbors the vessel for disagreement here.  Subsection 2.2.9 entitled Further Payments for Property Division states:

> In furtherance of the equitable division of property, Defendant shall pay to plaintiff the sum of Twenty Thousand Dollars ($20,000.00) per month for a period of 240 months commencing August 21, 1985.  Receipt of the payment of August 21, 1985 is hereby acknowledged.  These monthly payments shall terminate and be discharged upon death of Plaintiff [Sally Parker].  The obligation contained herein shall survive Defendant's death and be a lien against his estate.  Defendant shall have no right to prepay these monthly payments.

Section 6 of the Agreement, Tax Returns and Tax Matters, contemplated tax consequences.  Subsection 6.5 states:

The parties intend and agree that all transfers of property as provided for herein are subject to the provisions of Section 1041, Internal Revenue Code of 1954, as amended, entitled, "Treatment of Transfers of Property Between Spouses or Incident to Divorce", and that they shall be accounted for and reported on his or her respective individual income tax returns in such manner so that no gain or loss shall be recognized as a result of the division and transfer of property as provided for herein. Each party shall file his or her Federal and State tax returns, and report his or her income and losses thereon, consistent with the foregoing intent of reporting the division and transfers of property as a non-taxable event. The parties further agree that they shall file any elections required in order to enable Plaintiff to obtain the benefits (non-recognition of gain or loss) of the applicable provision of Section 1041 of the Internal Revenue Code and such provisions of Hawaii or other States where the Plaintiff is required to file returns . . . .

In Section 7 of the Agreement, Spousal Support Waiver, the parties agreed:

The parties acknowledge that as a result of the funds as and for property division and the release of marital rights and claims which Plaintiff is to receive as provided for herein she has no need for spousal support. *Plaintiff expressly waives her right to spousal support from Defendant.* Defendant expressly waives his right to spousal support from Plaintiff.

(italics added).

Mr. Goldman paid Ms. Parker $20,000 per month, $240,000 annually, in 1992, 1993, and 1994, and, for each of these years, deducted $240,000 as alimony paid on his individual income tax return. Ms. Parker did not report the payments as income for the years in question.[1] Mr. Goldman died on January 10, 1995. In 1996, the IRS sent his estate a notice of deficiency listing $141,645 for 1992; $97,891 for 1993; and $57,226 for 1994, plus penalties. The deficiencies arose from the Commissioner's determination the

---

[1]Although Taxpayer included the recipient's social security number on his return, the Commissioner did not file a separate case against Ms. Parker.

$20,000 monthly payments did not satisfy the definition of alimony in 26 U.S.C. § 71(b) but instead constituted a division of marital property based on the Agreement and, thus, were not deductible from the payor's income.

Taxpayer challenged the characterization in the Tax Court, which found the substance of the monthly payments under the "clear, explicit and express direction" of the Agreement was both "[i]n furtherance of the equitable division of property," and subject to the provisions of § 1041. To reach that conclusion, the Tax Court accepted the parties' stipulations to three of the four objective factors set forth under § 71(b) and determined the Agreement contained a "nonalimony designation" incapable of satisfying the requirement of § 71(b)(1)(B). Taxpayer disagreed with the Tax Court's analysis of § 71(b) and interpretation of the Agreement and filed this appeal.

Section 7482(a)(1) of the Internal Revenue Code (IRC) predicates our jurisdiction to review the decisions of the Tax Court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482(a)(1). Because the facts were stipulated, before us is solely a substantive legal question which we review *de novo*. **St. Charles Investment Co v. C.I.R.,** No. 99-9020, 2000 WL 1701299, at *2 (10th Cir. Nov. 14, 2000); **Security State Bank v. C.I.R.**, 214 F.3d 1254, 1256 (10th Cir. 2000); **Estate of Davenport v. C.I.R.**, 184 F.3d 1176, 1181 (10th Cir. 1999).

II. 26 U.S.C. § 71(b)

Treatment of alimony under the IRC is moored to Sections 71,[2] 215,[3] and 1041.[4]

Generally, these provisions treat "alimony or separate maintenance payment," 26 U.S.C.

§ 71(b)(1), as deductible to the payor spouse and includible in the payee spouse's income.

Payments outside of this harbor are neither deductible by the payor spouse nor included in

the income of the receiving spouse.  Hence, we look to these three provisions to

determine whether the Agreement can be read to embrace their consequences.

First, Section 71(b) defines alimony or separate maintenance payments:

(1) **In general.** – The term "alimony or separate maintenance payment"
means any payment in cash if –

(A) such payment is received by (or on behalf of) a spouse
under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such
payment as a payment which is not includible in gross income under
this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse
under a decree of divorce or of separate maintenance, the payee
spouse and the payor spouse are not members of the same household
at the time such payment is made, and

---

[2]As part of the Tax Reform Act of 1984, Pub. L. No. 98-369, sec. 422(a), 98 Stat. 494, 795, July 18, 1984, amended this section, substituting an objective test to determine "what constitutes alimony for Federal tax purposes."  H.R. Rep. No. 98-432, *reprinted in* 1984 U.S.C.C.A.N. 697.

[3]This section was also amended in 1984, Pub. L. No. 369, as part of the overall revision of payment provisions for alimony.

[4]26 U.S.C.§ 1041 was enacted in 1984, Pub. L. No. 98-369, Div. A, Title IV, § 421(a), July 18, 1984, 98 Stat.793.  *See* H.R. Rep. No. 98-432, pt. II, at 1492, *reprinted in* 1984 U.S.C.C.A.N. 697, 1135.

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Second, § 1041 of the IRC states, in part:

(a) **General rule.** – No gain or loss shall be recognized on a transfer of property from an individual to (or in trust for the benefit of) –

(1) a spouse, or

(2) a former spouse, but only if the transfer is incident to the divorce.

(b) **Transfer treated as gift; transferee has transferor's basis.** – In the case of any transfer of property described in subsection (a) –

(1) for purposes of this subtitle, the property shall be treated as acquired by the transferee by gift, and

(2) the basis of the transferee in the property shall be the adjusted basis of the transferor.

Thirdly, § 215(a) provides:

In the case of an individual, there shall be allowed as a deduction an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year.

Our course through these statutory sections is set by subparagraph (B) of § 71(b)(1), the Commissioner having stipulated the payments meet the standards of subparagraphs (A), (C), and (D). Thus, we must determine whether the Agreement designated the monthly payments be treated as alimony.

Section 18.2 of the Agreement provides it "shall be subject to and shall be interpreted under the laws of the State of Hawaii." Under Hawaii law, the intention of the

- 6 -

parties governs, *In re Fasi*, 634 P.2d 98, 104 (Haw. 1981), and "in construing a contract, a court's principal objective is to ascertain and effectuate the intention of the parties as manifested by the contract in its entirety." *University of Hawaii Prof'l Assembly v. University of Hawaii,* 659 P.2d 720, 724 (Haw. 1983). To this end, Hawaii recognizes as "fundamental that terms of a contract should be interpreted according to their plain, ordinary and accepted use in common speech, unless the contract indicates a different meaning." *Brown v. KFC Nat'l Mgmt. Co.*, 921 P.2d 146, 159 (Haw. 1996) (citation omitted). "If there is any doubt, the interpretation which most reasonably reflects the intent of the parties must be chosen." *University of Hawaii*, 659 P.2d at 724. When we read the Agreement in light of these precepts, we cannot discern any indication the parties intended anything other than for the monthly payments to constitute a division of marital property. The payments, as noted, are included in Section 2, Disposition of Marital Property and Separate Property, and are detailed in subsection 2.2.9, entitled Further Payments for Property Division, which begins, "In furtherance of the equitable division of property. . . ." These headings are amplified with additional indications the parties intended the payments to reflect a division of property: they will "terminate and be discharged" upon Ms. Parker's death and "survive Defendant's death and be a lien against his estate." The plain and ordinary meaning of the language, juxtaposed to that in section 7, Spousal Support Waiver, "Plaintiff expressly waives her right to spousal support from Defendant," permits no other interpretation. Ms. Parker's waiver of spousal

support "as a result of the funds as and for property division" can only be understood to mean Ms. Parker relinquished her right to alimony in exchange for the division of property. The parties intended to divide the marital property and "as a result of the funds as and for property division," Ms. Parker waived her right to spousal support.[5]

Were there any doubt about the parties' intention in providing for these payments "as part of" the equitable division of property and "as a result of" the division of marital property, the Agreement includes language the parties "intend[ed] and agree[d]" that all property transfers under the Agreement "are subject to the provisions of section 1041, Internal Revenue Code of 1954." That section, as noted, treats transfers of property from an individual to a spouse or to a former spouse "as acquired by the transferee by gift." 26 U.S.C. § 1041(b)(1). Under 26 U.S.C. § 215, the payments would be included in Ms. Parker's income, a result explicitly countermanded by subsection 6.5. Thus, the Tax Court correctly included the cash payments deemed and designated as "property" in the Agreement, notwithstanding Taxpayer's conversion of that particularized treatment into the rewriting of "all" cash transfers as non-taxable events or denigrating the reference to § 1041 as mere "boilerplate."

---

[5]Confronted with these unambiguous words by a question in oral argument, Taxpayer's counsel attempted to read the concept of consideration into the meaning of "waiver." We rejected that elaboration, tethering our interpretation of the term to its simplest meaning as "[t]he voluntary relinquishment or abandonment - express or implied - of a legal right or advantage." Black's Law Dictionary 1574 (7th ed. 1999).

Consequently, we cannot chart from the plain meaning of the Agreement the disputed monthly payments represent alimony as that term is defined in § 71(b)(1). While Taxpayer contends the Tax Court's analysis founders in the face of precedent like ***C.I.R. v. Jaffe***, 77 T.C.M. (CCH) 2167 (1999), the facts of that case are remarkably dissimilar, particularly, the language in the separation agreement designating the disputed payments as "alimony pendente lite." Although the Commissioner had argued the agreement's making Mr. Jaffe "responsible for income taxes due on the amount which is ultimately adjudicated to have been his alimony pendente lite obligation," the Tax Court found that language alone insufficient to constitute a designation for purposes of § 71(b)(1)(B). The substance of the parties' agreement in ***Jaffe*** consistently treated the payments as alimony.[6] The Tax Court here correctly followed the same analysis.

"Deductions . . . [being] a matter of legislative grace[,] [a] taxpayer claiming a deduction must establish the statutory basis for the deduction and demonstrate that *all* of the requirements of the relevant statute have been satisfied." ***Gibbs v. C.I.R.***, 73 T.C.M. (CCH) 2669 (1997) (italics added). Because Taxpayer failed to do so here, we affirm the Tax Court's conclusion the disputed payments do not constitute alimony under § 71(b)(1).

---

[6]Although counsel for Taxpayer professes to be aware of no other Tax Court decision embracing the analysis here and warns of the "specter of increased litigation, confusion and inequity," the hyperbole obfuscates the unalterable language to which the Tax Court gave plain meaning.

**AFFIRMED**.

ENTERED FOR THE COURT


John C. Porfilio
Senior Circuit Judge