KOOLAU RADIOLOGY, INC., a Hawaii corporation, Plaintiff–Appellee, v. THE QUEEN'S MEDICAL CENTER, a Hawaii Eleemosynary corporation, Defendant–Appellant

NO. 15258

(CIV. NO. 90–4046)

In the Matter of the Appointment of An Arbitrator for the Dispute Between QUEEN'S DEVELOPMENT CORP., Petitioner–Appellant, v. KOOLAU RADIOLOGY, INC., Respondent–Appellee

NO. 15257

(S.P. NO. 90–0524)

AUGUST 26, 1992

LUM, C.J., WAKATSUKI, MOON, AND LEVINSON, JJ., AND INTERMEDIATE COURT OF APPEALS CHIEF JUDGE BURNS, IN PLACE OF KLEIN, J., RECUSED

434

## OPINION OF THE COURT BY MOON, J.

In this consolidated appeal, petitioner–appellant Queen's Development Corp. (Queen's) and defendant–appellant The Queen's Medical Center (QMC or collectively, Queen's)[1] appeal a single order, entered by the circuit court, denying QMC's Motion for Stay of Proceedings and to Compel Arbitration and denying Queen's Petition for Appointment of an Arbitrator filed in favor of respondent/plaintiff–appellee Koolau Radiology, Inc. (Koolau).

Queen's, as lessor, and Koolau, as lessee, are parties to a written lease agreement which contains an arbitration clause. When a dispute arose regarding the lease rent, Koolau filed an action seeking declaratory relief. At the same time, Queen's petitioned the court to appoint an arbitrator and later moved to stay the declaratory judgment action and to compel arbitration. On appeal, Queen's contends that the trial court erred in not staying the declaratory judgment action, compelling arbitration, and appointing an arbitrator. Koolau, on the other hand, contests this court's jurisdiction to hear this appeal on the ground that the trial court's

---

[1] In its opening brief, Queen's points out that respondent/plaintiff–appellee Koolau Radiology, Inc. incorrectly named QMC instead of Queen's in its complaint for declaratory relief.

denial of Queen's motion for stay and to compel arbitration was not a final appealable order.[2]

Based on our review of the record, we conclude that the trial court's order was final and appealable, and thus this court has jurisdiction to hear this appeal. We find that the trial court erred in concluding that a valid dispute existed regarding the agreement to arbitrate because the existence of a valid arbitration agreement was never disputed. However, we conclude that arbitration is inappropriate because the issues which are in dispute extend beyond the scope of the arbitration clause. We therefore affirm the trial court's rulings, except for that portion which implies that a trial should be held on the issue whether an enforceable arbitration agreement exists, and remand this case for proceedings consistent with this opinion.

## I. FACTS

On October 1, 1977, Queen's entered into a lease with the Queen's Physicians Office Building Radiologic Laboratory, Ltd. (POBLAB), covering a portion of the Queen's Physicians Office Building. The original lease was amended three times: on November 5, 1979, on November 15, 1983, and on October 3, 1985. On the same day, October 3, 1985, POBLAB assigned the lease to Koolau.

Under the terms of the original lease and the subsequent amendments, POBLAB had successive options to renew its lease for additional three–year terms up to and including September 30, 1997 with the rent to be renegotiated for each additional term.

The original lease stated that the lessee shall pay either ten percent of gross profits per month or the base rent of other "first generation doctors" in the building, that is, doctors who had moved into the Queen's Physicians Office Building when it first opened,

---

[2] Koolau does not contest Queen's right to appeal the trial court's denial of Queen's petition for the appointment of an arbitrator.

whichever is greater. If the parties were unable to agree on the rent for a subsequent term, the lease contained a clause which mandated the appointment of an impartial real estate appraiser by the parties. If the parties could not agree on an appraiser, the clause further provided that either of them could petition the court to appoint an appraiser. This clause was included in all subsequent written amendments to the lease and constitutes the "arbitration agreement" upon which this appeal is based.[3]

After POBLAB had exercised its first option to extend the lease, Queen's entered into negotiations with POBLAB to fix the rent. Koolau claims that the parties orally agreed that POBLAB would pay a percentage of its gross revenues as rent until a ten year promissory note for equipment issued from Queen's to POBLAB was fully paid. At that point, the rent would be set at the same per-square-foot rate as that paid by the other first generation doctors in the POB until the termination of the lease. Koolau also claims that the oral agreement was expressed in an unsigned letter dated October 14, 1983, which was sent to POBLAB, and was further corroborated by various representatives of Queen's at the meetings negotiating the agreement as well as Queen's subsequent billings.

------

[3] The arbitration agreement reads as follows:

If the parties do not agree on the rent for the last optional term at least 30 days prior to commencement thereof, *they shall forthwith appoint an impartial real estate appraiser to determine the rent.* If they do not agree upon an appraiser, then *either of them may apply to the administrative judge of the First Circuit Court of the State of Hawaii requesting immediate appointment of the appraiser.* The costs of appraisal shall be divided equally among the parties. Until the appraisal report is completed, the Lessee shall continue to pay rent on the basis in effect during the preceding term, and *upon receipt of the report shall immediately pay the Lessor any difference between the rent paid and the rent which would have been paid for commencement of the renewal term on the basis determined by the appraiser,* together with interest on the difference at the rate of 2/3% per month.

(Emphasis added.)

After the lease negotiations concluded, Queen's sent POBLAB a document entitled Second Amendment to Lease, which Koolau claims was inconsistent with the alleged oral agreement. The second amendment did not specify that once the promissory note was satisfied, the rent would remain at parity with first generation doctors. Instead, the second amendment reiterated the original percentage of profits *or* comparable rent rates found in the lease promulgated in 1977 and covered the period from October 2, 1982 through September 30, 1985. The POBLAB representative who signed the lease testified that he believed the amendment contained the oral agreement.

POBLAB assigned the lease to Koolau on October 3, 1985, including the same rights, title, and interest of the Assignor in and to the lease and the amendments thereof. The Assignment of Lease and accompanying Short Form Lease incorporated the original 1977 lease, with its 1979 and 1983 amendments. Koolau later exercised its option to renew the lease from October 1, 1988 to September 30, 1991.

From October 1985 through the summer of 1987, Koolau paid rent to Queen's on a percentage basis. In 1987, when Koolau paid off the promissory note, it reduced the rent paid to Queen's. From 1987 until 1989, Queen's billed Koolau on a monthly basis for rent at a flat per–square–foot rate, similar to that charged to other first generation doctors. Koolau claims that this manner of billing was consistent with the oral agreement. Queen's denies the existence of an oral agreement and argues that it billed Koolau according to the flat rents charged to other first generation doctors only because it had no knowledge of Koolau's gross profits. Hence, Queen's maintains it was unable to determine and charge Koolau the "whichever is greater" rental rate.

In 1989, Queen's management changed, and the current dispute surrounding the method of determining rental payments arose. When attempts to resolve the dispute were unsuccessful,

Koolau filed a complaint against Queen's seeking a declaratory judgment and reformation of the lease based on the alleged oral agreement. On the same day, Queen's filed a separate special proceeding, petitioning the court for the appointment of an arbitrator. Subsequently, Queen's filed a motion for stay of proceedings and to compel arbitration in the declaratory judgment action. The petition and motion were heard at the same hearing.

The trial court found that numerous fact issues were raised regarding the existence of a valid arbitration agreement and the existence of a valid oral agreement. The trial court concluded "that there is a valid *dispute over the existence of an agreement to arbitrate[.]*" (Emphasis added.) Thus, the court denied Queen's petition for appointment of an arbitrator and its motion for stay of proceedings and to compel arbitration. Queen's timely filed this appeal.

## II. DISCUSSION

The central question in this case is whether the trial court erred in denying Queen's motion to compel arbitration. Our appellate courts have not stated what standard of review is applicable to this question. However, we note that under Hawaii's arbitration statute, before parties to a lawsuit can be ordered to arbitrate pursuant to Hawaii Revised Statutes (HRS) § 658–3, HRS § 658–1 requires that an enforceable, valid, and irrevocable agreement, in writing, exists. If the existence of an arbitration agreement is in issue, "the court shall proceed summarily to the [judge or jury] trial thereof." HRS § 658–3. The trial court can only decide, as a matter of law, whether to compel the parties to arbitrate their dispute if there is no genuine issue of material fact regarding the existence of a valid agreement to arbitrate. *See Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980). Therefore, we hold that the standard of review applicable to the trial court's decision in this case should be that which is applicable to a motion for

summary judgment. Accordingly, we review this case *de novo*, using the same standard employed by the trial court and based upon the same evidentiary materials "as were before [it] in determination of the motion." *Feliciano v. Waikiki Deep Water, Inc.*, 69 Haw. 605, 607, 752 P.2d 1076, 1078 (1988) (citation omitted); *see also Cuba v. Fernandez*, 71 Haw. 627, 631, 801 P.2d 1208, 1211 (1990); *First Hawaiian Bank v. Weeks*, 70 Haw. 392, 396, 772 P.2d 1187, 1190 (1989).

## A. Jurisdiction

Koolau contends that this court does not have jurisdiction to hear this appeal because the trial court's order was not final. Koolau maintains that rather than determine with finality whether arbitration would take place, the court's order effectively sends the parties summarily to trial to determine the existence of a valid arbitration agreement, in accord with HRS § 658-3, which provides:

> A party aggrieved by the failure, neglect, or refusal of another to perform under an agreement in writing providing for arbitration, may apply to the circuit court for an order directing that the arbitration proceed in the manner provided for in the agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement or the failure to comply therewith is not in issue, the court hearing the application shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. *If the making of the agreement or the default is in issue, the court shall proceed summarily to the trial thereof.*

(Emphasis added.)

Although the trial court's order does not specifically refer to HRS § 658-3, we agree with Koolau's reading of the order. The language of the order implies that the court intended the parties to proceed summarily to trial on whether a valid arbitration

agreement existed between Queen's and Koolau. The order provides, in pertinent part:

> [T]he [c]ourt finding numerous fact issues regarding *the question of whether or not an enforceable arbitration agreement exists*, and the [c]ourt further finding that [Koolau] relies heavily on the "oral agreement" which purportedly would establish the lease rent at the first generation physician level once the equipment was paid off, and that the enforceability of this agreement depends upon many factors, including:
>
> 1. Was it signed by Smith?
> 2. Did he have the requisite authority?
> 3. If so, was the rent set until 1997 or only for three years?
> 4. Was the arbitration provision therefore nullified?
> 5. Was the "oral agreement" superseded by subsequent lease amendments made in writing in 1983 and 1985?
> 6. Was there an oral agreement made enforceable by [Koolau] through its part performance?
>
> and the [c]ourt further finding if no enforceable "oral agreement" exists, clearly the request to arbitrate demands reference to an appraiser or appraisers to determine the rental issue pursuant to the lease; however, given the preliminary factual issues surrounding the question, the [c]ourt can only conclude that *there is a valid dispute over the existence of an agreement to arbitrate*, and the [c]ourt being fully appraised [sic] in the premises;
>
> IT IS HEREBY ORDERED, ADJU[D]GED AND DECREED:
>
> 1. Said petition is hereby denied;

2.    Said motion is hereby denied.

(Emphasis added.)

In *Association of Owners of Kukui Plaza v. Swinerton & Walberg Co.*, 68 Haw. 98, 705 P.2d 28 (1985), this court held that orders denying an application for a stay of proceedings until arbitration had been completed made in accordance with HRS § 658–5 [4] are appealable orders within the contemplation of HRS § 641–1(a) (appeals in civil actions). In *Kukui Plaza*, the Association of Owners of Kukui Plaza (Association) filed suit against Swinerton & Walberg Co. (Swinerton) for, *inter alia*, breaching a construction contract by not following plans and specifications. Following various attempts to resolve their differences without trial, Swinerton moved for and received a stay of court proceedings and an order compelling arbitration, pursuant to a provision in the construction contract to settle controversies by arbitration. *Id.* at 103–05, 705 P.2d at 33. Finding that the order constituted a final judgment for purposes of appeal, this court noted the existence of a small class of orders which "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 105, 705 P.2d at 34 (citation omitted).

Koolau attempts to distinguish *Kukui Plaza* on the ground that the present case does *not* constitute a final judgment because the trial court's order refers to "numerous fact issues regarding the

---

[4] HRS § 658–5 provides, in pertinent part:

No trial if issue referable to arbitration: If any action or proceeding is brought upon any issue referable to arbitration under an agreement in writing, the circuit court, upon being satisfied that the issue involved in the action or proceeding is referable to arbitration under such an agreement in writing, shall stay the trial of the action or proceeding until the arbitration has been had in accordance with the terms of the agreement . . . .

question of whether or not an enforceable arbitration agreement exists," which Koolau maintains must first be ascertained. However, as is more fully discussed below in section B, the parties' positions and the court's order indicate that the existence of a valid arbitration agreement is not disputed. Rather, the dispute centers around the validity of the alleged oral agreement. Determination of that issue, however, will not invalidate the arbitration agreement; it would only fix the rental value at the same per–square–foot rate as that paid by first generation doctors.

In *Matterhorn, Inc. v. NCR Corp.*, 727 F.2d 629 (7th Cir. 1984), the court found that an order granting or denying a motion to compel arbitration under section 4 of the federal arbitration statute,[5] which in pertinent part is virtually identical to HRS § 658–3, is appealable if it results in a dismissal of the action. *Id.* at 631 (citation omitted). The court distinguished the dismissal of an action from the mere denial of a motion to compel arbitration pending a trial on the existence of an arbitration agreement by noting that the latter did not entail "serious or irreparable consequences." *Id.* at 632. The court noted: "Here, the stay was not denied *pending a trial on the merits*; it was denied pending a trial

---

[5] The federal arbitration statute, 9 U.S.C.A. § 4, provides in pertinent part:

*A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court* which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, *for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. . . .*

(Emphasis added.)

on the existence of an arbitration agreement." *Id.* at 632 (emphasis added).

It is apparent that where the court denies a motion to compel arbitration and instead directs that the parties engage in a trial to determine whether an arbitration agreement exists, such denial is not appealable because the anticipated trial would not determine the merits of the action. Such is not the case here. The trial mandated in this case would focus on the existence of a valid oral agreement and not on the existence of a valid agreement to arbitrate because the latter is undisputed. If the oral agreement is found to be enforceable, the ultimate issue in the case would be resolved, that is, rent would be based on first generation doctor rates. Consequently, Queen's contractual right to arbitrate would essentially be dismissed. Thus, we conclude that the trial court's order denying Queen's petition for a stay of proceedings pending arbitration and to compel arbitration was a final order for purposes of appeal, and this court has jurisdiction to hear this case.

## B. The Arbitration Agreement

Initially, we note that because Queen's petition for appointment of arbitrator is dependent on the granting of its motion for stay of proceedings and to compel arbitration, our discussion will focus on the motion.

HRS § 658–3 provides that a party aggrieved by the failure of another to perform under a written agreement to arbitrate may petition the circuit court for an order compelling arbitration. As we have observed, the pertinent language of HRS § 658–3 is virtually identical to the language of the federal arbitration statute, 9 U.S.C. § 4,[6] and thus, due to the absence of Hawaii law regarding the scope of the trial court's role when faced with a motion to compel arbitration, we look to federal authority for guidance.

_____

[6] *See supra* note 5.

In *PaineWebber Incorporated v. Hartmann*, 921 F.2d 507 (3d Cir. 1990), the Third Circuit Court of Appeals stated:

> Before compelling an unwilling party to arbitrate, § 4 [of the federal arbitration statute] . . . requires the court to engage in a limited review to ensure that the dispute is arbitrable — i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.

*Id.* at 511 (citations omitted); *see also Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991); *Smith Wilson Co. v. Trading & Dev. Establishment*, 744 F. Supp. 14, 17 (D.D.C. 1990); *I.S. Joseph Co. v. Michigan Sugar Co.*, 803 F.2d 396 (8th Cir. 1986). Thus, when presented with a motion to compel arbitration, the court is limited to answering two questions: 1) whether an arbitration agreement exists between the parties; and 2) if so, whether the subject matter of the dispute is arbitrable under such agreement.

### 1. Existence of a Valid Arbitration Agreement

In this case, we find that the trial court erred in concluding "that there is a valid dispute over the existence of an agreement to arbitrate." The parties do not dispute that they are subject to the arbitration agreement. The dispute is whether the alleged oral agreement is valid. Queen's argues that the alleged oral agreement is invalid as a matter of law based on the statute of frauds and the parol evidence rule and, thus, the issue of the amount of rent due is for the arbitrator. Alternatively, Queen's contends that

> [a]ny question of an oral promise concerning the rental amount is irrelevant to enforcement of the arbitration clause. The court was required to appoint an arbitrator "to determine the rent," and the arbitrator, in making the rent determination, would have then considered the fixed

rent issue [based on the alleged oral agreement] raised by [Koolau].

Koolau's recognition of the existence of a valid arbitration agreement is revealed by its argument that "this [oral] agreement superceded the [arbitration agreement in] the [o]riginal [l]ease, because there [would] no longer [be] any need to determine the rent other than by ascertaining the amounts actually charged to certain other tenants in the POB." Accordingly, Koolau, too, does not challenge the existence of a valid arbitration agreement. Moreover, the trial court's order indicates on its face that the court recognized the existence of a valid arbitration agreement, but questioned its applicability in light of the alleged oral agreement. As noted above, the order states, in pertinent part:

> [T]he [c]ourt finding numerous fact issues regarding the question of *whether or not an enforceable arbitration agreement exists*, and the [c]ourt further finding that [Koolau] relies heavily on the "oral agreement" which purportedly would establish the lease rent at the first generation physician level once the equipment was paid off, and that *the enforceability of this agreement* depends upon many factors[.]

(Emphasis added.) The order also states, "if no enforceable 'oral agreement' exists, clearly *the request to arbitrate demands reference to an appraiser or appraisers* to determine the rental issue pursuant to the lease[.]" (Emphasis added.) However, we note that referring the parties to arbitration in the event the oral agreement is deemed unenforceable presumes that the controversy over the lease rent issue would remain. If the alleged oral agreement is found to be invalid, the terms and conditions of the written lease agreement would control, that is, the lease rent would be either ten percent of gross profits or the per square foot rate paid by first generation doctors, whichever is greater. There is nothing in the record to indicate that Koolau would continue to dispute the lease

rent payable if the oral agreement was deemed unenforceable. Therefore, the court's ruling directing the parties to arbitration is inappropriate.

Having found that the existence of a valid arbitration agreement is not in dispute, we conclude that the arbitration clause in the written lease is binding on the parties.

## 2. Scope of the Arbitration

We now look to the language of the arbitration clause to determine whether the underlying dispute regarding the validity of the oral agreement is arbitrable. "The existence of a valid agreement to arbitrate and the scope of that arbitration are issues that a court must decide." 6A CORBIN ON CONTRACTS § 1444A (1962). In *Beclar Corp. v. Young*, 7 Haw. App. 183, 750 P.2d 934 (1988), the Intermediate Court of Appeals held that when "[t]he [arbitration clause] is clear and unambiguous . . . its interpretation is a question of law which may be made by [the appellate] court. . . . Consequently, we are free to interpret the [arbitration clause] and apply the correct law to its enforcement." *Id.* at 190, 750 P.2d at 938–39 (citations omitted). The language of the arbitration clause in this case is clear — it mandates the appointment of a real estate appraiser to determine lease values. It does not suggest in any way that a real estate appraiser would arbitrate the validity of an alleged oral agreement modifying the written lease or issues regarding legal defenses, such as the statute of frauds or the parol evidence rule. To allow arbitration of the validity of the alleged oral agreement by a real estate appraiser would clearly broaden the scope of the arbitration clause beyond its plain meaning and the apparent intent of the parties. We conclude arbitration is inappropriate because the underlying dispute, set forth in Koolau's complaint for a declaratory judgment, raises issues which extend beyond the scope of the arbitration agreement.

Finally, Queen's contends that the trial court erred in failing to rule on its defenses of statute of frauds and parol evidence.

However, "[w]hen faced with a petition to compel arbitration, a court's role is limited to 'ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.'. . . The court neither resolves the underlying factual controversy nor weighs the relative merits of the parties' claims." *International Ass'n of Machinists & Aerospace Workers v. Aloha Airlines, Inc.*, 790 F.2d 727 (9th Cir.), *cert. denied*, 479 U.S. 931 (1986); *see also PaineWebber*, 921 F.2d at 511; *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1363 (N.D. Ill. 1990). Therefore, we find Queen's contention to be without merit.

## III. CONCLUSION

A trial to determine whether an enforceable arbitration agreement exists is inappropriate in this case because the existence of the arbitration agreement is not disputed. Arbitration is also inappropriate because the dispute between the parties raises issues which extend beyond the scope of the arbitration agreement. We conclude that the issues pertaining to the validity of the alleged oral agreement modifying the lease rent provision should be resolved in the declaratory judgment action. We remand this case for a hearing on the merits under the complaint for declaratory relief.

*Bruce L. Lamon* and *Carol A. Eblen* of Goodsill, Anderson, Quinn and Stifel, for petitioner–appellant Queen's Development Corp.

*Robert J. Faris* and *Steven L. Ching* of Gelber, Gelber, Ingersoll & Klevansky, for respondent–appellee Koolau Radiology, Inc.