IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---oOo---

BERT YOGI and DARNELL YOGI,
Plaintiffs-Appellees
v.
HAWAII MEDICAL SERVICE ASSOCIATION,
Defendant-Appellant
and
JOHN DOES 1-99, JANE DOES 1-99, DOE ENTITIES
1-20, AND DOE GOVERNMENTAL UNITS 1-10,
Defendants

NO. 29145

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 08-1-0147)

AUGUST 27, 2010

NAKAMURA, CHIEF JUDGE, FOLEY, and GINOZA, JJ.

OPINION OF THE COURT BY GINOZA, J.

Defendant-Appellant Hawaii Medical Service Association
(HMSA) appeals from the Order Denying HMSA's Motion to Compel
Arbitration (Order) filed on April 9, 2008 in the Circuit Court
of the First Circuit (circuit court).[1] By way of its motion
below, HMSA sought to compel arbitration of claims brought by
Plaintiffs-Appellees Bert Yogi and Darnell Yogi (the Yogis) for
breach of contract, bad faith, intentional infliction of
emotional distress (IIED), and negligent infliction of emotional
distress (NIED). These claims stem from the Yogis' allegations
that, over a period of time, HMSA denied and delayed coverage for
a medical procedure recommended by Bert Yogi's physician.

---

[1] The Honorable Sabrina S. McKenna presided.

On appeal, HMSA contends the circuit court erred in denying its motion to compel arbitration because the Yogis' claims are within the scope of an arbitration provision contained in an HMSA Preferred Provider Plan. For the reasons set forth below, we conclude that the circuit court was correct in denying HMSA's motion to compel arbitration.

I. **Background**

A. **Request For Preauthorization of Medical Procedure**

The parties do not dispute the facts in this case. In 1997, while working, Bert Yogi (Mr. Yogi) sustained injuries to his shoulder, neck, and back which resulted in multiple surgeries between 1998 and mid-2003. Over the years, Mr. Yogi received various medications to alleviate the pain.

In February 2005, while Mr. Yogi was enrolled in HMSA's Preferred Provider Plan for Hawaii Employer-Union Health Benefits Trust Fund (Plan), his physician, Dr. Endicott, submitted a preauthorization request to HMSA for an intrathecal infusion pump to treat Mr. Yogi.[2] HMSA denied coverage, initially on the basis that Mr. Yogi was covered by workers' compensation insurance and then later, after being informed the workers' compensation insurer had denied coverage, on the basis that, *inter alia*, the intrathecal infusion pump was not medically necessary.

In June 2005, Dr. Endicott requested that HMSA reconsider its denial of preauthorization for the intrathecal infusion pump. HMSA upheld its denial.

In January 2006, Mr. Yogi appealed HMSA's denial under an internal appeal process set out in the Plan. Later that month, HMSA issued its internal appeal decision denying coverage.

---

[2] HMSA states that "[a]n intrathecal pump consists of a programmable pump that is surgically implanted in the abdominal area and connected to a catheter that is inserted into the intrathecal space of the spine. The pump sends morphine directly into the cerebrospinal fluid that surrounds the spinal cord. The morphine blocks the neurotransmitters that the brain perceives as pain."

In February 2006, Mr. Yogi sought external review by initiating a proceeding with the Hawai'i Insurance Commissioner. Such external review was provided for under the terms of the Plan, as required pursuant to Hawaii Revised Statutes (HRS) § 432E-6 (2005 Repl.). A hearing was held before a three-member panel selected by the Insurance Commissioner and, in July 2006, the Insurance Commissioner issued a decision reversing HMSA's denial of coverage for the intrathecal infusion pump. Mr. Yogi thereafter underwent the procedure for placement of the intrathecal infusion pump.

B.    **The Instant Lawsuit**

On January 23, 2008, the Yogis initiated this action in the circuit court, alleging that HMSA acted unreasonably, wantonly, and oppressively in denying the preauthorization request for the intrathecal infusion pump. In their complaint, the Yogis assert claims for breach of contract, bad faith, IIED and NIED, and seek damages.

On February 13, 2008, HMSA filed a Motion to Compel Arbitration. After a hearing on March 18, 2008, the circuit court issued its April 9, 2008 Order denying the motion, stating in relevant part:

> Defendant failed to identify any provision in the Plan for disputes involving bad faith claims, and a provision for further remedies such as those Plaintiffs are pursuing in this case is also absent from the clause pertaining to a review by the panel. Chapter 8 of the Plan does not, therefore, mandate arbitration of Plaintiffs' claims herein.

On May 7, 2008, HMSA filed a Notice of Appeal from the Order denying the motion to compel arbitration.

II.   **Standards of Review**

A.    **Motion to Compel Arbitration**

We review a ruling on a motion to compel arbitration *de novo* and based on the same standards that apply to a summary judgment ruling. The Hawai'i Supreme Court has articulated the applicable standards as follows:

3

The trial court can only decide, as a matter of law, whether to compel the parties to arbitrate their dispute if there is no genuine issue of material fact regarding the existence of a valid agreement to arbitrate. *See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir.1980). Therefore, we hold that the standard of review applicable to the trial court's decision in this case should be that which is applicable to a motion for summary judgment. Accordingly, we review this case *de novo*, using the same standard employed by the trial court and based upon the same evidentiary materials "as were before [it] in determination of the motion."

Koolau Radiology, Inc. v. Queen's Medical Center, 73 Haw. 433, 439-40, 834 P.2d 1294, 1298 (1992) (citations omitted). See also, Brown v. KFC Nat'l Mgmt. Co., 82 Hawai'i 226, 231, 921 P.2d 146, 151 (1996); Peters v. Aipa, 118 Hawai'i 308, 312-13, 188 P.3d 822, 826-27 (App. 2008).

B.    **Contract Interpretation**

The standard of review applicable to the circuit court's interpretation of the arbitration agreement is as follows:

As a general rule, the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court. The determination whether a contract is ambiguous is likewise a question of law that is freely reviewable on appeal. These principles apply equally to appellate review of the construction and legal effect to be given a contractual agreement to arbitrate.

Brown, 82 Hawai'i at 239, 921 P.2d at 159 (internal quotation marks and citations omitted).

III. **Discussion**

As set forth by the Hawai'i Supreme Court:

"when presented with a motion to compel arbitration, the court is limited to answering two questions: 1) whether an arbitration agreement exists between the parties; and 2) if so, whether the subject matter of the dispute is arbitrable under such agreement." *Ko'olau Radiology, Inc. v. Queen's Med. Ctr.*, 73 Haw. 433, 445, 834 P.2d 1294, 1300 (1992); *see also Luke v. Gentry Realty, Ltd.*, 105 Hawai'i 241, 247, 96 P.3d 261, 267 (2004) ("Even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." (Citation and internal quotation marks omitted.)).

Hawaii Medical Ass'n v. Hawaii Medical Service Ass'n, 113 Hawai'i 77, 91, 148 P.3d 1179, 1193 (2006).

4

Here, there is no dispute that an arbitration provision is contained as part of Chapter 8 of the Plan. The crux of this case, therefore, is whether the claims asserted by the Yogis in this action come within the scope of that arbitration provision. Because there are no genuine issues of material fact and the issue presented turns on contract interpretation, we decide the issue on appeal as a matter of law.

A.    **The Relevant Provisions Of The Plan**

Given that our "principal objective is to ascertain and effectuate the intention of the parties as manifested by the contract in its entirety", <u>Brown</u>, 82 Hawaiʻi at 240, 921 P.2d at 160 (citation omitted), and to give proper context to the arbitration provision in this case, we set out all of the pertinent parts of Chapter 8 of the Plan.

**Chapter 8: Dispute Resolution**

.  .  .  .

**Your Request for an Appeal**

**Writing Us to Request an Appeal**
<u>If you wish to dispute a determination made by HMSA related to coverage, reimbursement, any other decision or action by HMSA, or any other matter related to this Agreement, you must request an appeal</u>. Your request must be in writing unless you are requesting an expedited appeal. We must receive it within one year from the date of <u>the action or decision you are contesting</u>. In the case of coverage or reimbursement disputes, this is one year from the date we first informed you of the denial or limitation of your claim, or of the denial of coverage for any requested service or supply.

.  .  .  .

We will respond to your appeal within 60 calendar days of our receipt of your appeal.

**Expedited Appeal**
You may request expedited appeal if application of the time periods for appeals above may:

■    Seriously jeopardize your life or health,
■    Seriously jeopardize your ability to gain maximum functioning, or
■    Subject you to severe pain that cannot be adequately managed without the care or treatment that is the subject of the appeal.

.  .  .  .

5

**What Your Request Must Include**
To be recognized as an appeal, <u>your request must include all of the following information</u>:

- The date of your request.
- Your name.
- The date of the <u>service we denied</u> or date of the <u>contested action or decision</u> (or in the case of precertification for a service or supply, the date of our denial of coverage for such service or supply).
- The subscriber number from your member card.
- The provider name.
- A description of facts related to your request and <u>why you believe our action or decision was in error</u>.
- Any other information relating to your appeal including written comments, documents, and records you would like us to review.

. . . .

### If You Disagree with Our Appeal Decision

**Request for Arbitration**
<u>If you disagree with HMSA's appeals decision, you must either 1) request arbitration before a mutually selected arbitrator, or 2) request a review by a panel appointed by the Hawaii State Insurance Commissioner</u>.

. . . . You must have fully complied with HMSA's appeals procedures described above and we must receive your request for arbitration within one year of the decision rendered on appeal. In arbitration, one person (the arbitrator) reviews the positions of both parties and makes the final decision to resolve the disagreement. No other parties may be joined in the arbitration. The arbitration is binding and the parties waive their right to a court trial and jury.

. . . .

. . . . <u>The questions for the arbitrator shall be whether we were in violation of law, or acted arbitrarily, capriciously, or in abuse of our discretion</u>. The arbitration shall be conducted in accord with the Federal Arbitration Act, 9 U.S.C. §1 et seq., and such other arbitration rules as both parties agree upon.

. . . .

**Request for Review by Insurance Commissioner**
You may request review by a panel selected by the Hawaii Insurance Commissioner by submitting a request for review within 60 days of the date of HMSA's appeals decision to the Insurance Commissioner at:

. . . .

If your request for review is accepted by the Commissioner, the Commissioner will appoint a <u>three member panel composed of a representative from another health plan, a provider not involved in your care, and a representative from the Commissioner's office</u>. A hearing will be conducted within

6

60 days and the panel will issue a decision within 30 days of the hearing.

You may request expedited review by the Insurance Commissioner if application of the above time frames may:

- Seriously jeopardize your life or health,
- Seriously jeopardize your ability to gain maximum functioning, or
- Subject you to severe pain that cannot be adequately managed without the care or treatment that is the subject of the appeal.

(Emphasis added.)

In addition to the above, Chapter 10 of the Plan contains a provision that the Yogis contend is relevant. It states:

**Chapter 10: General Provisions**

. . . .

**Dues and Terms of Coverage**

. . . .

**Governing Law**
To the extent not superseded by the laws of the United States, this coverage will be construed in accord with and governed by the laws of the state of Hawaii. <u>Any action brought because of a claim against this coverage will be litigated in the state or federal courts located in the state of Hawaii and in no other</u>.

(Emphasis added.)

B.    **Scope Of The Arbitration Provision**

The Hawai'i Supreme Court has stated:

"Although the public policy underlying Hawai'i law strongly favors arbitration over litigation, the mere existence of an arbitration agreement does not mean that the parties must submit to an arbitrator disputes which are outside the scope of the arbitration agreement." *Brown v. KFC Nat'l Mgmt. Co.*, 82 Hawai'i 226, 244, 921 P.2d 146, 164 (1996) (citation and internal quotation marks omitted). "What issues, if any, are beyond the scope of a contractual agreement to arbitrate depends on the *wording of the contractual agreement to arbitrate*." *Rainbow Chevrolet, Inc. v. Asahi Jyuken (USA), Inc.*, 78 Hawai'i 107, 113, 890 P.2d 694, 700 (App.1995), *superseded by statute as stated in, Ueoka v. Szymanski*, 107 Hawai'i 386, 114 P.3d 892 (2005) (emphasis added).

<u>Hawaii Medical Ass'n</u>, 113 Hawai'i at 92, 148 P.3d at 1194 (emphasis in original).

7

Particularly important in this case, "a contract 'should be construed as a whole and its meaning determined from the entire context and not from any particular word, phrase, or clause.'" Hawaii Medical Ass'n, 113 Hawai'i at 92, 148 P.3d at 1194 (quoting Hawaiian Isles Enters., Inc. v. City & County of Honolulu, 76 Hawai'i 487, 491, 879 P.2d 1070, 1074 (1994)). Further, "in interpreting contracts, ambiguous terms are construed against the party who drafted the contract." Luke v. Gentry Realty, Ltd., 105 Hawai'i 241, 249, 96 P.3d 261, 269 (2004) (refusing to enforce an ambiguous arbitration clause despite public policy favoring arbitration).

Based on our reading of the Plan, it does not manifest an intent by the parties to submit to arbitration the Yogis' claims for breach of contract, bad faith, IIED or NIED, which seek money damages. Rather, considering all of its relevant parts, we construe the Plan to mean that arbitration is one of two options an enrollee may select -- arbitration or review by a panel appointed by the Insurance Commissioner -- to challenge or dispute an HMSA determination, action or decision that the enrollee seeks to change. At best, the arbitration provision is ambiguous.

### 1. Chapter 8 of the Plan

The starting point for our interpretation of the Plan is the sentence: "[i]f you disagree with HMSA's appeals decision, you must either 1) request arbitration before a mutually selected arbitrator, or 2) request a review by a panel appointed by the Hawaii State Insurance Commissioner." (Emphasis added). Given this language, the scope of any potential arbitration is based on the matters or issues that come within HMSA's appeal process under the Plan.[3]

---

[3] While we focus on the specific language of the arbitration provision in this case, there are similarities to the decision in Hawaii Medical Ass'n. There, the Hawai'i Supreme Court held that an arbitration provision contained in an HMSA Participating Physician Agreement was triggered after a claim or dispute had been through an administrative appeal process set out by the

(continued...)

In turn, the matters or issues within HMSA's appeal process are delineated by the following language: "[i]f you wish to <u>dispute a determination made by HMSA</u> related to coverage, reimbursement, any other decision or action by HMSA, or any other matter related to this Agreement, you must request an appeal." (Emphasis added.) HMSA argues that this language is very broad and that the arbitration provision applies to any dispute related to coverage or to any other matter related to the Plan. We do not read this provision or the Plan so broadly. This language, when properly construed along with the rest of Chapter 8, does not convey an intent that HMSA's appeal process encompasses the type of claims asserted in this case, seeking damages and alleging a series of actions over time denying and delaying approval of a medical procedure. In this action, the Yogis do not seek to have HMSA change its decision about covering the intrathecal infusion pump because that question has already been addressed by the review panel and Mr. Yogi has received the medical procedure. Rather, the Yogis bring this action seeking damages for HMSA's alleged conduct over the approximate year and a half period from when Dr. Endicott sought preauthorization for the intrathecal infusion pump to when Mr. Yogi was able to undergo the procedure.

A fair reading of Chapter 8 is that the appeal process is intended to deal with a challenge or "dispute" to a "determination", "decision" or "action" by HMSA in order that an enrollee may seek to alter or change that determination, decision

---

[3](...continued)
agreement. <u>Hawaii Medical Ass'n</u>, 113 Hawai'i at 93, 148 P.3d at 1195. Because the administrative appeal process was limited to disputes between an *individual* participating physician and HMSA that arose from a *decision* by HMSA, the arbitration provision was similarly limited. <u>Id.</u> Thus, the court held that collective claims by groups of participating physicians alleging unfair methods of competition were not within the scope of the arbitration provision. <u>Id.</u> at 94, 148 P.3d at 1196. The court agreed with the plaintiffs that "the necessary system-wide relief could never be granted in an individual proceeding where the specific issue being addressed is one isolated decision or a series of decisions relating to one physician . . . . [T]he Agreement's administrative remedies by design are not adequate to provide relief for the types of claims alleged here." <u>Id.</u> (Brackets and ellipsis in original.)

or action.  Indeed, under the appeal process, a request for an appeal must be received by HMSA within a year from the date of "the action or decision you are contesting."  (Emphasis added.) Further, the 60 day time period for HMSA to respond to an appeal, as well as the expedited appeal procedure allowing for an even quicker appeal if the normal appeal period will seriously jeopardize the person's life or health, seriously jeopardize the person's ability to gain maximum functioning, or subject the person to severe pain, all suggest that the appeal process is not intended to deal with claims such as bad faith, IIED or NIED, which seek money damages.

Similarly, the mandatory contents of an appeal "request", as detailed in Chapter 8, focus on setting out the specific action or decision by HMSA that is being challenged. Under Chapter 8, "[t]o be recognized as an appeal" the request must contain information including: "[t]he date of the service we denied", or the "date of the contested action or decision", or the date of HMSA's denial of coverage for precertification for a service or supply; the provider's name; and "[a] description of facts related to your request and why you believe our action or decision was in error."  (Emphasis added.)  Requiring this type of information indicates that the intended scope of an internal appeal -- and therefore the arbitration provision -- is not as broad as HMSA contends and it is not contemplated that the claims for damages brought by the Yogis would be part of the appeal process.

The arbitration provision itself further suggests its limited scope.  As noted above, if an enrollee disagrees with HMSA's appeal decision, the enrollee: "must either 1) request arbitration before a mutually selected arbitrator, or 2) request a review by a panel appointed by the Hawaii State Insurance Commissioner."  (Emphasis added.)  Read in its entirety and within the context of Chapter 8, this language could reasonably be interpreted to mean that the scope of issues to be addressed

10

in arbitration is similar to the scope of issues to be addressed in a panel review.[4] The scope of panel reviews, in turn, is set out under the statutory scheme provided by HRS Chapter 432E, entitled "Patients' Bill of Rights and Responsibilities Act."

The parties agree that panel reviews are done pursuant to HRS § 432E-6. Under HRS § 432E-6(a), a panel reviews a managed care plan's final internal determination of a "complaint", and a complaint is defined as "an expression of dissatisfaction, either oral or written." HRS § 432E-1. The three-member panels consist of "a representative from a managed care plan not involved in the complaint, a provider licensed to practice and practicing medicine in Hawaii not involved in the complaint, and the commissioner or the commissioner's designee." The panel is authorized to "issue an order affirming, modifying, or reversing the decision" and to award reasonable attorney's fees and costs. HRS § 432E-6(a) and (e). Under this statutory scheme, given the composition of a panel and the scope of its authority, such panels are not established to consider, nor are they authorized to award, damages. Review panels under HRS Chapter 432E would not address claims such as breach of contract, bad faith, IIED or NIED.

In sum, Chapter 8 of the Plan does not establish an intent by the parties to have the claims in this action subject to the arbitration provision. Rather, a reasonable reading of Chapter 8 leads to the contrary conclusion. At a minimum, there is ambiguity under Chapter 8 regarding the intent and meaning of the arbitration provision. As the drafter of the Plan, ambiguous terms are construed against HMSA. See Luke, 105 Hawai'i at 249, 96 P.3d at 269.

---

[4] Even though it is possible this language could be read another way, it is ambiguous. Moreover, adding further ambiguity, the arbitration provision goes on to state that "[t]he questions for the arbitrator shall be whether we were in violation of law, or acted arbitrarily, capriciously, or in abuse of our discretion." This language does not indicate that an arbitrator may address the question of damages, and its intended meaning is far from clear. Simply put, this language is also ambiguous.

## 2.    Chapter 10 of the Plan

Chapter 10 of the Plan covers the following areas:
"Eligibility for Coverage", "When Coverage Begins", "When
Coverage Ends", "Continued Coverage", "Confidential Information"
and "Dues and Terms of Coverage".  Under the section entitled
"Dues and Terms of Coverage," there is a provision entitled
"Governing Law".  As noted above, the Yogis contend the
"Governing Law" provision creates further ambiguity as to the
intent of the arbitration provision contained in Chapter 8.  The
"Governing Law" provision states:

**Dues and Terms of Coverage**

.  .  .  .

**Governing Law**
To the extent not superseded by the laws of the United
States, this coverage will be construed in accord with and
governed by the laws of the state of Hawaii.  <u>Any action
brought because of a claim against this coverage will be
litigated in the state or federal courts located in the
state of Hawaii and in no other</u>.

(Emphasis added.)  Because this provision speaks to litigating
claims against the Plan's coverage in Hawaii's state or federal
courts, it undermines HMSA's argument that arbitration is
required for any dispute as to coverage or "any other matter"
related to the Plan.

HMSA relies on some of the headings within Chapter 10
to contend that the "Governing Law" language applies only where
HMSA denies coverage because of lack of eligibility, termination
of coverage, or non-payment of dues -- in other words, where
coverage as a whole does not exist.  We disagree.  First, the
headings, structure and language of Chapter 10 do not support
HMSA's argument.  Second, such a reading is inconsistent with the
language of the "Governing Law" provision itself.  The initial
sentence states "this coverage will be construed in accord with .
.  . the laws of the state of Hawaii."  If, as HMSA argues, this
provision applied only where coverage did not exist at all (i.e.
for lack of eligibility, termination of coverage, or non-payment
of dues), there would be no need to "construe" the coverage.

Most importantly, the second sentence applies to "[a]ny action brought because of a claim against this coverage" (emphasis added), and not just claims involving lack of eligibility, termination of coverage, or non-payment of dues.

The "Governing Law" provision in Chapter 10 clearly contemplates litigation in Hawaii's state or federal courts for claims against coverage, and it therefore reflects that the arbitration provision in Chapter 8 is not as broad as HMSA contends. We agree with the Yogis that the "Governing Law" provision adds to the already existing ambiguity of the arbitration provision.

## IV.   Conclusion

We conclude that the Plan does not reflect an intent by the parties to arbitrate the claims asserted in this action, including the relief sought for damages. Alternatively, at a minimum, the arbitration provision is ambiguous. We therefore affirm the circuit court's denial of HMSA's motion to compel arbitration.

Charles A. Price
(Koshiba Agena & Kubota)
for Defendant-Appellant

Rafael G. Del Castillo
(Arleen D. Jouxson with
 him on the briefs)
(Jouxson-Meyers & Del Castillo)
for Plaintiffs-Appellees