96 P.3d 261

Denise I. LUKE, Stacy K.Y. Armstrong and Timothy R. Armstrong, on Behalf of Themselves and all Others Similarly Situated, Plaintiffs–Appellants,

v.

GENTRY REALTY, LTD., Defendant–Appellee,

and

John Does 1–10, Jane Does 1–10, Doe Corporations 1–10, Doe Partnerships 1–10, and Doe Governmental Entities 1–10, Defendants.

Denise I. Luke, Stacy K.Y. Armstrong, and Timothy R. Armstrong, on Behalf of Themselves and all Others Similarly Situated, Plaintiffs–Appellants,

v.

Gentry Homes, Ltd., and John Shaw, Defendants–Appellees,

and

John Does 1–10, Jane Does 1–10, Doe Corporations 1–10, Doe partnerships 1–10, and Doe Governmental Entities 1–10, Defendants.

No. 24502.

Supreme Court of Hawai'i.

Aug. 19, 2004.

707–733(1)(b), one can hardly presume he 'pres-      ent[s] no danger to the public.' "

Thomas R. Grande, Mark S. Davis, Stanley E. Levin, and Michael K. Livingston (Davis Levin Livingston Grande), and Wayson W.S. Wong, Honolulu, on the briefs for Plaintiffs–Appellants Denise I. Luke, Stacy K.Y. Armstrong, and Timothy R. Armstrong, on behalf of themselves and all others similarly situated.

Crystal K. Rose and Amara Harrell (Bays, Deaver, Lung, Rose, & Baba), Honolulu, on the briefs, for Defendants–Appellees Gentry Realty, Ltd., Gentry Homes, Ltd., and John Shaw.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

Plaintiffs-appellants Denise I. Luke, Stacy K.Y. Armstrong, and Timothy R. Armstrong [hereinafter collectively, "Plaintiffs"], on behalf of themselves and all others similarly situated, appeal from the first circuit court's July 24, 2001 orders granting in part and denying in part the motions to dismiss or, in the alternative, to stay proceedings pending

arbitration filed by the defendants-appellees Gentry Homes (Homes), John Shaw, and Gentry Realty[1] (Realty) [hereinafter collectively, "Defendants"]. Based on the following, we vacate the circuit court's orders to the extent that the circuit court ordered a stay of proceedings pending arbitration and we remand to the circuit court for further proceedings.

## I. BACKGROUND

In 1994–1995, owner and developer Homes built houses in the SummerHill subdivision in 'Ewa, O'ahu. Shaw was the architect who designed the homes and Realty was the exclusive sales agent for all SummerHill sales. The SummerHill homes were constructed with steel framing; as part of the design, a foam skirt was placed around each home.

The Plaintiffs allege that, early into the construction, Homes invited Julian Yates, Ph. D., an entomologist and termite expert, to inspect the residences and comment on their construction with respect to potential termite damage. The Plaintiffs contend that Dr. Yates informed representatives of Homes and Realty that the residences were well constructed in terms of minimizing termite damage, but that the foundational foam skirt would allow termites to enter the residences undetected. According to the Plaintiffs, Dr. Yates told the representatives that although steel and wood treatment minimized termite damage, the infestation of termites in one's home would still cause damages to the residences and their contents. Consequently, the Plaintiffs allege, Dr. Yates rejected Homes' use of the foundational foam skirt; however, Homes continued to use the foundational foam skirts. Furthermore, according to the Plaintiffs, Realty—despite Dr. Yates' assessment—advertised and marketed the SummerHill residences as being built to minimize termite problems.

The Plaintiffs allege that they, along with approximately 200 others, purchased homes in SummerHill. The Plaintiffs each executed a Deposit Receipt Offer Acceptance (DROA) sales agreement; the sales agreement was provided by Homes and was used for the sale of each house. The sales agreement stated that the two parties to each agreement were the seller and the buyer: "This Agreement is made by GENTRY HOMES, LTD., a Hawaii corporation (which will be called the 'Seller'), and the person or persons named in Article II below (who will be called the 'Buyer' even if there may be more than one person)." The sales agreement also provided that "[n]o salesperson, employee or agent of the Seller has any authority to bind the Seller to this Agreement." While Realty joined the seller and buyer in signing the sales agreement, Realty signed only to certify that the terms of the agreement were true to the best of its knowledge and belief; Realty did not sign the agreement as a party. The pertinent provisions of the sales agreement are contained in paragraphs G and K. Paragraph G states in relevant part:

**G. Events of Default**

. . . .

**2. Default by Buyer.** Except as otherwise covered in this Agreement, if Buyer fails to make any payment when it is due or fails to keep any of Buyer's other promises or agreements contained in this Agreement (including timely performance of the Mortgage Loan Acts), and Buyer does not cure the default within 15 days after Seller notifies Buyer by certified mail of the default, then Seller will have the right, at Seller's sole option and in addition to any other rights contained herein, to do any one or more of the following:

(a) Seller may cancel this Agreement by giving Buyer written notice of cancellation. If Seller cancels this Agreement due to Buyer's default, Buyer agrees that it will be difficult and expensive to determine the amount of loss or damage Seller will suffer. This is because of Seller's commitments relating to the financing of the Project, the effect of default and cancellation of one sale on other sales, and the nature of the real estate market in Hawaii. Buyer agrees that the sums paid by Buyer under this Agreement are a reasonable estimate of a fair payment to Seller for Seller's loss or damage resulting from

---

1. Realty voluntarily dissolved in March 1999.

Buyer's default. Seller may therefore keep all sums paid by Buyer under this Agreement as liquidated damages.

(b) Seller may file a lawsuit for damages.

(c) Seller may file a lawsuit for "specific performance" (in other words, a lawsuit to make Buyer keep all of Buyer's promises and agreements).

(d) Seller may take advantage of other rights which the law allows or which Seller may have under this Agreement.

Buyer also agrees to pay for all costs, including Seller's reasonable lawyers' fees and the escrow cancellation fee, which are incurred because of Buyer's default.

3. Default by Seller. If Seller fails to keep any of Seller's promises or agreements contained in this Agreement, Buyer may pursue any remedies available at law or in equity, which may include requiring Seller to go through with this Agreement or cancelling this Agreement. If Buyer cancels this Agreement because of Seller's default, Seller will repay to Buyer all sums paid by Buyer to Seller or Escrow under this Agreement, without interest.

Paragraph K, entitled "Miscellaneous," provides in relevant part:

1. MANDATORY MEDIATION AND ARBITRATION OF DISPUTES. If any dispute arises between Buyer and Seller arising out of or relating to the Property or the Agreement, including any disputes arising after the Recording Date, the parties agree that prior to engaging in arbitration, they will make good faith efforts to reach a settlement of their dispute by negotiation, and then by mediation under the Construction Industry Mediation Rules of the American Arbitration Association. If the parties are unable to settle their dispute, then any unresolved dispute arising out of this Agreement or relating to the Property shall be resolved by arbitration before a single arbitrator administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules, and judgment on the arbitrator's award may be entered in any court having jurisdiction thereof. If both parties agree, the person serving as mediator may also serve as arbitrator for the dispute. Each party shall be responsible for the administrative fees incurred by that party, and the arbitrator's and mediator's compensation shall be shared equally by the parties. The prevailing party, if any, shall be entitled to an award of attorney's fees, and the arbitrator shall be the sole judge in determining the reasonableness of attorney's fees to be awarded and in determining which party is the prevailing party. The parties, the American Arbitration Association, and the mediator and arbitrator shall keep the contents and results of any mediation and arbitration confidential.[2]

(Bold typeface omitted from original.)

As part of its obligations under the sales agreement, Homes made certain disclosures concerning the project. The disclosures did not include the alleged design deficiency noted by Dr. Yates.[3]

On March 14, 2001, the Plaintiffs filed a class action complaint against Realty, as sales agent of Gentry Homes, in Civil No. 01-1-0848. The Plaintiffs claimed that Realty: (1) failed to disclose information relating to the foam skirt to purchasers; (2) breached its duty of care regarding the foam skirt; and (3) perpetrated unfair or deceptive trade practices under Hawaii Revised Statutes (HRS) Chapter 480.

On May 4, 2001, the Plaintiffs filed a class action complaint against Homes and Shaw in Civil No. 01-1-1401. The Plaintiffs sought recovery from Homes for (1) negligence, (2) the tort of non-disclosure, (3) unfair and/or deceptive trade practices in violation of HRS Chapter 480, (4) breach of warranty/contract, (5) negligent design, (6) respondeat superior vicarious liability for Shaw's negligence, and (7) punitive damages. The Plaintiffs also sought recovery from Shaw for architect negligence and asked the circuit court for declar-

---

2. Although paragraph K(1) mandates both mediation and arbitration, we will refer to this provision as "the arbitration clause" throughout the remainder of this opinion.

3. At closing, the Plaintiffs were given (and were required to sign) a disclosure document; this disclosure indicated, *inter alia,* that Homes did not termite treat the soil.

atory and/or injunctive relief. The two cases were consolidated under Civ. No. 01–1–0848.

The Defendants filed motions to dismiss or, in the alternative, to stay the Plaintiffs' complaints pending arbitration,[4] arguing that the Plaintiffs' complaints were subject to the arbitration clause contained in the sales agreement.

On July 2, 2001, the circuit court[5] ruled on the Defendants' motions and ordered that the Plaintiffs' complaints be stayed pending arbitration. The court stated that "the contract, in the Court's view, is clear that post closing disputes arising out of or relating to the property or this agreement are subject to binding arbitration pursuant to Section K1 of the DROA." The circuit court also ruled that Realty and Shaw, although not parties to the contract, were entitled to invoke the arbitration clause:

> The motion for arbitration dealt with the real estate company, that's one of the specific motions of Gentry Realty, and the Court is finding that *as an agent, they [sic] are also bound by the arbitration clause and can invoke the arbitration clause.* And in any event, the Court would note that Gentry Realty is also at least mentioned in the DROA, they're signing off on the receipt[.]

(Emphasis added.)

Also on July 2, 2001, the circuit court denied the Plaintiffs' motion for class certifi-cation "based on the reasons stated by the defendants [6] and based on *Brown versus KFC National Management Co.,* [82 Hawai‘i 226, 246, 921 P.2d 146, 166 (1996) ] at foot-note 23." [7]

On July 24, 2001, the circuit court issued written orders on its rulings (denying class certification and ordering proceedings stayed pending arbitration). On August 20, 2001, the court certified its orders (regarding the stay of proceedings pending arbitration) [8] for interlocutory appeal, but declined to certify its ruling regarding class certification for interlocutory appeal. On August 22, 2001, the Plaintiffs timely filed their notice of in-terlocutory appeal.

On appeal, the Plaintiffs argue that the circuit court erred in staying the case against Homes, Realty, and Shaw pending arbitra-tion. The Plaintiffs contend that: (1) under the sales agreement, the Plaintiffs were al-lowed to litigate their claims; (2) they are entitled to limited discovery and a trial as to the intent of the parties with respect to litigation or arbitration; (3) the arbitration clause was unenforceable without an eviden-tiary hearing because the arbitration clause is (a) unconscionable and (b) in contravention of statutory rights conferred under HRS § 480–13 (1993 & Supp.2000); [9] and (4) Real-ty was not a party to the arbitration clause and was not entitled to invoke it.

---

**4.** Homes and Shaw filed their motion to dismiss on May 30, 2001, and Realty filed its motion to dismiss on June 7, 2001.

**5.** The Honorable Sabrina McKenna presided over the July 2, 2001 proceedings.

**6.** The Defendants argued in their memorandum in opposition to the Plaintiffs' motion for class certification that (1) the motion was premature because of the pending motion to dismiss or, in the alternative, to stay pending arbitration, and (2) the class certification requirements under Ha-waii Rules of Civil Procedure (HRCP) Rules 23(a) and 23(b)(3) had not been met and/or could not be determined until limited discovery on the class certification issue had been completed.

**7.** In *Brown,* we held that an arbitration agree-ment contained in an employment application was not an unenforceable contract of adhesion. *Brown,* 82 Hawai‘i at 246–47, 921 P.2d at 166–67. We stated that arbitration clauses in general are not "inherently unfair" to employees or job applicants. *Id.* at 246 n. 23, 921 P.2d at 166 n. 23.

**8.** On July 24, 2001, the circuit court issued two orders regarding the stay of proceedings pending arbitration: one for Civ. No. 01–1–0848 and one for Civ. No. 01–1–1401, although the two matters had been consolidated.

**9.** HRS § 480–13 provides in relevant part:

> (a) Except as provided in subsections (b) and (c), any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter:
> (1) May sue for damages sustained by the person . . .; and
> (2) May bring proceedings to enjoin the un-lawful practices, and if the decree is for the plaintiff, the plaintiff shall be award-ed reasonable attorneys fees together with the cost of the suit.

The Defendants maintain that: (1) the circuit court did not err in ordering the stay pending arbitration because the Plaintiffs' claims fall within the scope of the unambiguous arbitration clause; (2) the Plaintiffs have failed to raise any material issue of fact entitling the Plaintiffs to a hearing on the issue of unconscionability; (3) the arbitration clause did not contravene the Plaintiffs' statutory rights under HRS § 480–13; and (4) the court correctly determined that Realty may invoke the arbitration clause as an agent of Homes.

## II. *STANDARD OF REVIEW*

As we have stated, "A petition to compel arbitration is reviewed *de novo*[,]" which is the same standard "applicable to a motion for summary judgment." *Brown v. KFC Nat'l Mgmt. Co.*, 82 Hawai'i 226, 231, 921 P.2d 146, 151 (1996). "[T]he trial court's decision is reviewed 'using the same standard employed by the trial court and based upon the same evidentiary materials as were before [it] in determination of the motion.' " *Id.* (quoting *Koolau Radiology, Inc. v. Queen's Med. Ctr.*, 73 Haw. 433, 439–40, 834 P.2d 1294, 1298 (1992)) (second alteration in original). In the instant case, however, the Plaintiffs appeal from the circuit court's order staying proceedings pending arbitration, rather than from a circuit court order compelling arbitration. Nevertheless, the standard of review is *de novo* because the existence of a valid and enforceable agreement to arbitrate is a question of law. HRS § 658A–6(b) (Supp.2003) ("The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate."); *Koolau Radiology, Inc.*, 73 Haw. at 447, 834 P.2d at 1301 (" 'The existence of a valid agreement to arbitrate and the scope of that arbitration are issues that a court must decide.' " (Quoting 6A *Corbin on Contracts* § 1444A (1962).)); *Simbajon v. Gentry*, 81 Hawai'i 193, 196, 914 P.2d 1386, 1389 (App.1996) (applying *de novo* review to the circuit court's grant of the appellees' motion to stay proceedings pending arbitration and to compel arbitration).[10]

## III. *DISCUSSION*

### A. *Realty, As An Agent Of Homes, May Invoke The Sales Agreement's Arbitration Clause.*

In the instant case, Realty was not a party to the contract between the Plaintiffs and Homes. Although Realty signed the sales agreement, the plain language of the sales agreement demonstrates that the only parties to each sales contract were the buyer and the seller (*i.e.*, Homes). As a result, the Plaintiffs contend that Realty is unable to

(b) Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480–2:
  (1) May sue for damages sustained by the consumer . . . ; and
  (2) May bring proceedings to enjoin the unlawful practices, and if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorneys' fees together with the cost of suit.
(c) The remedies provided in subsections (a) and (b) shall be applied in class action and de facto class action lawsuits or proceedings including actions brought in behalf of direct purchasers, and actions brought in behalf of indirect purchasers by the attorney general under section 480–14 [(pertaining to suits by the state)], provided that:
  (1) The minimum $1,000 recovery provided in subsections (a) and (b) shall not apply in a class action or a de facto class action lawsuit;
  (2) In class actions or de facto class action where both direct and indirect purchasers are involved, or where more than one class of indirect purchasers are [sic] involved, a defendant shall be entitled to prove as a partial or complete defense to a claim for compensatory damages that the illegal overcharge has been passed on or passed back to others who are themselves entitled to recover so as to avoid the duplication or recovery of compensatory damages. . . .

In 2001, HRS § 480–13 was amended in ways not relevant to the instant case. *See* 2001 Haw. Sess. L. Act 79, § 1 at 127. In 2002, HRS § 480–13(c) was amended and the remedies provided in HRS §§ 480–13(a) and 480–13(b) were made applicable to class actions and de facto class actions brought on behalf of direct and indirect purchasers. *See* 2002 Haw. Sess. L. Act 229, § 3 at 917.

**10.** We also note that an order granting a stay of proceedings pending arbitration, like an order compelling arbitration, is an appealable final order. *Ass'n of Owners of Kukui Plaza v. Swinerton & Walberg Co.*, 68 Haw. 98, 107, 705 P.2d 28, 35 (1985).

invoke the arbitration clause contained within the sales agreement because Realty was not a party to the arbitration agreement.

The Plaintiffs are correct that they may not be forced to arbitrate their disputes absent an agreement to do so: "Even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir.1997). Without an agreement to arbitrate, a court may not force parties to engage in arbitration. Larry E. Edmonson, *Domke on Commercial Arbitration* § 1:2, at 1–5 (3d ed. 2003) ("Since arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which the party has not agreed to submit."); *see* HRS § 658A–6(b) ("The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate."). *See also* HRS § 658A–3 (Supp.2003) (providing in part that HRS chapter 658A, entitled "Uniform Arbitration Act," applies to "*agreement[s]* to arbitrate" (emphasis added)); *Tatibouet v. Ellsworth*, 99 Hawai'i 226, 240, 54 P.3d 397, 411 (2002) ("The contract in the present case unequivocally exhibits the voluntariness of the parties' agreement to arbitrate their disputes."). "An agreement is a manifestation of mutual assent on the part of two or more persons." Restatement (Second) of Contracts § 3 (1981).

However, a nonsignatory to an arbitration agreement may invoke the arbitration agreement against a signatory to that agreement under certain circumstances. Several courts of appeal have combined traditional agency principles with estoppel theories to require a signatory to arbitrate with a nonsignatory agent. For example, as the United States Court of Appeals for the Fifth Circuit discussed:

[A] nonsignatory cannot compel arbitration merely because he is an agent of one of the signatories. An agent is not ordinarily liable under the contract he executes on behalf of his principal, so long as his agency is disclosed, but he is personally liable if his acts breach an independent duty. [*See* Restatement (Second) of Agency § 320 (1958).] If he seeks to compel

arbitration, he is subject to the same equitable estoppel framework left to other nonsignatories. It is to this framework that we now turn.

There are two circumstances under which a nonsignatory can compel arbitration. First, when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. Second, when the signatory to the contract containing a arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

*Westmoreland v. Sadoux*, 299 F.3d 462, 466–67 (5th Cir.2002) (citing *Hill v. G.E. Power Sys., Inc.*, 282 F.3d 343, 348 (5th Cir.2002)) (footnotes omitted), *reh'g denied*, 2002 WL 31049584, —— F.3d —— (5th Cir.2002), 2002 U.S.App. LEXIS 18770 (2002), *cert. denied*, 537 U.S. 1232, 123 S.Ct. 1354, 155 L.Ed.2d 196 (2003). *Accord Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir.2003) ("[A] willing non-signatory seeking to arbitrate with a signatory that is unwilling may do so under what has been called an alternative estoppel theory, which takes into consideration the relationships of persons, wrongs and issues[.]" (Citations and internal quotation signals omitted.)); *Long v. Silver*, 248 F.3d 309, 320 (4th Cir.2001) ("A nonsignatory may invoke an arbitration clause under ordinary state-law principles of agency or contract."), *cert. denied*, 534 U.S. 894, 122 S.Ct. 213, 151 L.Ed.2d 151 (2001); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999) ("[T]here are certain limited exceptions, such as equitable estoppel, that allow nonsignatories to a contract to compel arbitration. A second exception exists when, under agency or related principles, the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." (Citations and internal quotation signals omitted.)). *See also Britton v. Co-op Banking Group*, 4 F.3d 742,

747–48 (9th Cir.1993) (holding that a nonsignatory agent could not compel arbitration where the agent's alleged wrongdoing did not "relate to or arise out of the contract containing the arbitration clause"); *Letizia v. Prudential Bache Sec., Inc.,* 802 F.2d 1185, 1187–88 (9th Cir.1986) (holding that nonsignatory employees of the signatory could invoke the arbitration clause because the employees' alleged wrongdoing related to their employment). In other words, a signatory to an arbitration agreement is estopped from refusing to arbitrate claims against a nonsignatory when the signatory's claims are intertwined with, rather than independent of, the agreement containing the arbitration clause; the justification for estopping the signatory from refusing to arbitrate is that "circumstances allow the inference that the signatory and the nonsignatory have agreed to submit to arbitration." *Domke on Commercial Arbitration* § 13:8, at 13–18; *see also InterGen N.V. v. Grina,* 344 F.3d 134, 145 (1st Cir. 2003) ("[T]he doctrine of equitable estoppel precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations.").

■ Based on the foregoing, we hold that a nonsignatory agent has standing to invoke an arbitration agreement if one of the following two conditions is met:

First, when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. Second, when the signatory to the contract containing a arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

*Westmoreland,* 299 F.3d at 467. A nonsignatory may not invoke an arbitration clause merely because of its status as an agent of one of the signatories. If the claim(s) against the nonsignatory are independent of the agreement in which the arbitration clause appears, then the nonsignatory agent may not invoke the arbitration clause.[11] *See id.; Britton v. Co-op Banking Group,* 4 F.3d at 747–48.

In the instant case, the Plaintiffs and Homes signed the sales agreement and, therefore, are both signatories to the arbitration clause. Although Realty is a nonsignatory, Realty has standing to ask the court to invoke the arbitration clause if (1) the Plaintiffs depend upon the terms of the sales agreement in asserting their claims against Realty, or (2) the Plaintiffs raise allegations of "substantially interdependent and concerted misconduct by both the nonsignatory [*i.e.,* Realty] and one or more of the signatories to the contract [*i.e.,* Homes]." *Westmoreland,* 299 F.3d at 467.

Based on the undisputed facts of this case, Realty had standing to invoke the arbitration clause because the Plaintiffs raised allegations of substantially interdependent and concerted misconduct on the part of Realty and Homes. The Plaintiffs allege that the Defendants sold the Plaintiffs defective homes, that the Defendants knew of these defects, and that the Defendants failed to disclose these defects to the Plaintiffs. The Plaintiffs' claims against Realty include failure to disclose, breach of duty of care, and unfair and/or deceptive trade practices; the Plaintiffs' claims against Homes include negligence, the tort of non-disclosure, unfair and/or deceptive trade practices, breach of warranty/contract, negligent design, respondeat superior vicarious liability for Shaw's negligence, and punitive damages. In short, the Plaintiffs' claims against Realty and Homes involve "substantially interdependent and concerted misconduct." · *Westmoreland,* 299 F.3d at 467. Therefore, Realty (the nonsignatory agent) had standing to ask the circuit court to invoke the arbitration clause

---

11. Our holding is limited to situations in which a nonsignatory wishes to invoke an arbitration agreement against a signatory of that agreement. We decline to resolve the issue as to whether there are circumstances under which a signatory may bind a nonsignatory to an arbitration agreement. For a discussion of enforcement of arbitration clauses by a signatory against a nonsignatory, *see* Jaime Dodge Byrnes & Elizabeth Pollman, Comment, *Arbitration, Consent and Contractual Theory: The Implications of EEOC v. Waffle House,* 8 Harv. Negot. L.Rev. 289 (2003); *see also Thomson–CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir.1995) (recognizing five theories for binding nonsignatories to arbitration agreements).

in the sales agreement, and the circuit court correctly concluded that Realty was entitled to invoke the arbitration clause.

Realty's standing to ask the circuit court to invoke the arbitration clause does not, however, mean that the arbitration clause was enforceable. Realty was entitled to ask the circuit court to enforce the arbitration agreement, but the circuit court could grant this request only if the Plaintiffs had actually agreed to arbitrate their claims. Based on the following, we hold that the circuit court erred in granting the request to enforce the arbitration agreement (by staying judicial proceedings pending arbitration) because the Plaintiffs did not agree to arbitrate this dispute.

### B. The Circuit Court Erred In Staying The Plaintiffs' Claims Pending Arbitration Because The Dispute Resolution Language Is Ambiguous.

In the instant case, the dispute resolution language contained in the sales contract is ambiguous. Upon reading the sales contract, the first dispute resolution clause one encounters is the following (under the paragraph heading "Events of Default"): "If Seller fails to keep any of Seller's promises or agreements contained in this Agreement, Buyer may pursue any remedies available at law or in equity, which may include requiring Seller to go through with this Agreement or cancelling this Agreement." Three pages later, under the heading "Miscellaneous," the sales contract provides in part that "[i]f any dispute arises between Buyer and Seller arising out of or relating to the Property or the Agreement, ... then any unresolved dispute arising out of this Agreement or relating to the Property shall be resolved by arbitration[.]" Taking these two provisions together, the scope of the binding arbitration provision is unclear. See Gov't Employees Ins. Co. v. Franklin, 66 Haw. 384, 387, 662 P.2d 1117, 1119 (1983) ("Ambiguity is said to exist when there is doubt as to the meaning of written words."); Univ. of Hawaii Prof'l As-

sembly ex rel. Daeufer v. Univ. of Hawai'i, 66 Haw. 214, 219, 659 P.2d 720, 724 (1983) ("In construing a contract, a court's principal objective is to ascertain and effectuate the intention of the parties as manifested by the contract in its entirety."); United Truck Rental Equip. Leasing, Inc. v. Kleenco Corp., 84 Hawai'i 86, 92, 929 P.2d 99, 105 (App.1996) ("A word or phrase within a contract is ambiguous if, examining the word or phrase in the context of the entire contract, the word or phrase is reasonably susceptible to more than one meaning."). A reasonable buyer entering into this contract would not know whether she or he maintained the right to judicial redress or whether she or he had agreed to arbitrate any potential dispute. Therefore, an ambiguity exists in the plain language of the contract.

This ambiguity must be resolved in favor of the Plaintiffs. This court has affirmed the general rule that, in interpreting contracts, ambiguous terms are construed against the party who drafted the contract. Gushiken v. Shell Oil Co., 35 Haw. 402, 416 (1940) (" 'Since one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity of language are resolved in favor of the latter.' " (Quoting 3 Williston, Contracts (rev. ed.) § 621.)). See also Chelsea Indus., Inc. v. AccuRay Leasing Corp., 699 F.2d 58, 61 (1st Cir.1983) ("[I]n case of doubt, an instrument is to be taken against the party that drew it."); Jacobson v. Sassower, 66 N.Y.2d 991, 993, 489 N.E.2d 1283, 1284, 499 N.Y.S.2d 381, 382 (1985) ("In cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language[.]"). Resolving this ambiguity in favor of the Plaintiffs, we cannot say that the Plaintiffs agreed to submit the claims made in this litigation to arbitration; therefore, we hold that the circuit court erred in staying the judicial proceedings pending arbitration.[12]

---

12. While we share in the overwhelming support in this jurisdiction in favor of arbitration as a means of dispute resolution, see, e.g., HRS § 658A–6(a) (Supp.2003) ("An agreement con-

tained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground

## IV. CONCLUSION

Based on the foregoing, we: (1) vacate the circuit court's July 24, 2001 final order granting in part and denying in part Realty's motion to dismiss or, in the alternative, to stay the Plaintiffs' complaint pending arbitration to the extent that the circuit court's order stayed proceedings pending arbitration; (2) vacate the circuit court's July 24, 2001 final order granting in part and denying in part Homes' and Shaw's motion to dismiss or, in the alternative, to stay the Plaintiffs' complaint pending arbitration to the extent that the circuit court's order stayed proceedings pending arbitration; and (3) remand this case to the circuit court for further proceedings.

---

that exists at law or in equity for the revocation of a contract."); HRS § 658A–23 (Supp.2003) (describing specific and limited circumstances under which a court may vacate an arbitration award); *Tatibouet*, 99 Hawai'i at 234, 54 P.3d at 405 ("It is well settled that the legislature overwhelmingly favors arbitration as a means of dispute resolution."), it is axiomatic that there must be an *agreement* to arbitrate in the first instance. Thus, despite the acknowledged benefits of arbitration in general, the circuit court erred in staying the judicial proceedings pending arbitration.