188 P.3d 822

**Henry Haalilio PETERS,**
**Plaintiff–Appellee,**

v.

**Nathan T.K. AIPA, Defendant–Appellant**

and

**John Does 1–10; Doe Partnerships 1–5; Doe Corporations 1–5; and Doe Governmental or Professional Associations 1–5, Defendants.**

No. 27700.

Intermediate Court of Appeals of Hawai'i.

July 14, 2008.

As Amended July 25, 2008.

James Kawashima, Brian Y. Hiyane, Shirley M. Kawamura (Kawashima Lorusso & Tom LLP), Honolulu, for Defendant–Appellant.

Eric A. Seitz, Lawrence I. Kawasaki, Ronald N.W.B. Kim, Honolulu, for Plaintiff–Appellee.

RECKTENWALD, C.J., WATANABE, and LEONARD, JJ.

Opinion of the Court by LEONARD, J.

Defendant–Appellant Nathan T.K. Aipa (**Aipa**) appeals from an order denying Aipa's motion for summary judgment or, in the alternative, to compel arbitration (**Order**), regarding claims brought against him by Plaintiff–Appellee Henry Haalilio Peters (**Peters**) for alleged breaches of attorney-client confidentiality in conjunction with certain grand jury testimony given by Aipa. The Order was filed on December 7, 2005, in the Circuit Court of the First Circuit (**Circuit Court**).[1]

Aipa argues the Circuit Court erred when it denied his motion seeking either summary judgment in his favor or, in the alternative, to compel arbitration, because Peters allegedly released Aipa from liability and agreed to arbitrate disputes regarding the release when Peters entered into a broad settlement agreement with, *inter alia*, the Attorney General of Hawai'i (**AG**), Kamehameha Schools Bishop Estate (**KSBE**), KSBE's interim trustees, and Peters's (former) co-trustees for KSBE.

## I. *BACKGROUND*

Peters served as one of five trustees for KSBE until 1999. Aipa served as general counsel and chief legal officer for KSBE for several years concurrent with Peters's tenure as trustee.

In September of 1998, the AG, in the capacity of *parens patriae*, filed civil and probate claims against the five KSBE trustees, including Peters, seeking their removal from office and/or surcharge, an accounting, and other equitable relief. After extensive and substantial mediation efforts in connection with these matters, the trustees, including Peters, executed a Settlement Agreement in September of 2000 (**Settlement Agreement**) agreeing, *inter alia*, to release, waive, and settle all claims arising out of or relating to the pending civil petitions for removal, surcharge, and reimbursement. The Settlement Agreement was approved by the Probate Court of the First Circuit (**Probate Court**), in Equity No.2048, on October 12, 2000.

Although Aipa was not a party to the Settlement Agreement, under the clear and unambiguous terms of the Settlement Agreement, he is entitled to the benefit of the release set forth in the Settlement Agreement as a "Representative" of parties to the Settlement Agreement. The release, set forth in paragraph 3 of the Settlement Agreement, provides in part (emphasis added):

Subject to the exclusions and limitations set forth in this Agreement, including but not limited to those contained in Paragraphs 7 and 10 hereunder, the ATTORNEY GENERAL, KAMEHAMEHA SCHOOLS, PETERS, STENDER, WONG, LINDSEY, JERVIS, KIHUNE, COON, KEALA, LAU and LIBKUMAN, on their own behalf and on behalf of their respective Representatives, hereby fully release, acquit and forever discharge *each other and their respective Representatives* from any and all claims. . . .

■ "Representatives" is defined in paragraph 14 of the Settlement Agreement to mean and include "the party's or parties' (as the case may be) past, present and future . . . employees, attorneys. . . ." Peters's Complaint herein expressly identified Aipa as both an employee of and attorney to KSBE:

(5) . . . Defendant Aipa was employed by KSBE and served as its general counsel and chief legal officer.

(6) During Defendant Aipa's employment by KSBE as its general counsel and chief legal officer Plaintiff entered into and maintained an attorney-client relationship with Defendant Aipa as to matters relating to and arising from Plaintiff's service as a Trustee of KSBE.

■ Thus, based on the allegation in the Complaint, Peters has conceded that Aipa is covered by the release.[2] Peters's assertion is, however, that the release does not bar the particular claims brought in this case. Therefore, we must also consider (1) what claims were released and (2) whether the

---

1. The Honorable Sabrina S. McKenna presided.

2. A party's factual allegation in a complaint is a judicial admission which binds the party. *See*

*Int'l Bhd. of Elec. Workers, Local 1357 v. Haw'n Tel.*, 68 Haw. 316, 329 n. 2, 713 P.2d 943, 949 n. 2 (1986).

claims at bar are within the scope of the release. In the release, Peters released, acquitted, and forever discharged Aipa from:

any and all claims, crossclaims, counterclaims and third-party claims (however denominated), demands, obligations, actions, causes of action, liability or liabilities, surcharges, reimbursements or repayments, penalties, rights, damages, losses, interest, attorneys' fees, costs, expenses, and compensation of every kind and every nature whatsoever, whether in law or in equity, whether known or unknown, arisen, arising or to arise in the future and which concern or relate, directly or indirectly, to any or all of the following:

a. All claims asserted in the various petitions for removal and/or surcharge of one, more or all of the Former Trustees in Equity No.2048 including, without limitation, the following: (i) the Attorney General's Response To Master's Consolidated Report On The 109th, 110th And 111th Annual Accounts filed on or about September 9, 1998; (ii) that certain Petition of the Attorney General on Behalf of the Trust Beneficiaries to Remove and Surcharge Trustees, for Accounting, and for Other Equitable Relief filed on or about September 10, 1998; (iii) that certain Amended Petition Of The Attorney General On Behalf Of The Trust Beneficiaries To Remove and Surcharge Trustees, For Accounting, And For Other Equitable Relief filed on or about August 24, 1999; (iv) that certain Second Amended Petition of the Attorney General on Behalf of the Trust Beneficiaries to Remove and Surcharge Trustees, for Accounting, and for Other Equitable Relief filed on or about November 30, 1999 ("Surcharge Claims"); and (v) the Master's reports on the 109th, 110th and 111th Annual Accounts.

b. *All claims relating to, concerning, involving or arising out of the Surcharge Claims.*

c. All claims, actions or petitions (however denominated), which were or which could have been asserted, to remove the Former Trustees as trustees of KAMEHAMEHA SCHOOLS, to seek the repayment by the Former Trustees to KAMEHAMEHA SCHOOLS of any and all compensations, payments and/or other benefits they may have received from KAMEHAMEHA SCHOOLS, and to surcharge the Former Trustees, individually and/or collectively, for any act, omission, decision or other conduct on his, her and/or their part as trustees of KAMEHAMEHA SCHOOLS prior to and including May 7, 1999.

(Emphasis added.)

The core allegation underlying Peters's claims against Aipa, set forth in paragraph 11 of Peters's Complaint, is that:

[C]ommencing in 1998 Defendant Aipa repeatedly testified in grand jury proceedings as to confidential information about [Peters] that Defendant Aipa had obtained in the course of his aforementioned attorney-client relationship with [Peters].

■ The grand jury proceedings referenced in Peters's Complaint underlie the AG's grand jury indictment against Peters and Jeffrey R. Stone in a case docketed as *State v. Peters,* Cr. No. 99–1502, App. No. 23151, which was consolidated on appeal with *State v. Wong,* App. No. 22671, and reported as *State v. Wong,* 97 Hawai'i 512, 40 P.3d 914 (2002).[3] The indictment's charges against Peters included theft in the first degree and criminal conspiracy arising out of certain real estate transactions for units in the Kalele Kai leasehold condominium project, which was on KSBE land. *State v. Wong,* 97 Hawai'i at 516, 40 P.3d at 918. In the course of presenting the case to the grand jury, the AG called Aipa as a witness, without notifying Peters that Aipa would testify, without obtaining a waiver of the attorney-client privilege from Peters, and without obtaining required prior court approval to call attorneys before the grand jury. *Id.* at 516–17, 40 P.3d at 918–19. Aipa apparently testified about an unrelated matter, referred to as the

---

3. We can take judicial notice of the records and files of related cases. *Roxas v. Marcos,* 89 Hawai'i 91, 110 n. 9, 969 P.2d 1209, 1228 n. 9 (1998). In opposition to Aipa's summary judgment motion, Peters identified *State v. Wong* as the criminal proceedings related to grand jury testimony underlying his claims.

McKenzie Methane gas investment, as well as the Kalele Kai transactions. *Id.* at 516, 40 P.3d at 918. The circuit court dismissed the indictment against Peters, without prejudice, based in part on the AG's misconduct. *Id.* at 517, 40 P.3d at 919. On appeal, the Hawai'i Supreme Court affirmed the dismissal and vacated and remanded with instructions to enter the dismissal with prejudice. *Id.* at 528, 40 P.3d at 930.

On July 24, 2003, Peters filed this suit against Aipa seeking damages for breach of duty, breach of trust, breach of fiduciary duty, and breach of contract stemming from the alleged breach of attorney-client privilege in the grand jury proceedings.

On August 4, 2005, Aipa filed a Motion for Summary Judgment Or In the Alternative to Compel Arbitration (**Aipa's Motion**). Aipa argued that the Settlement Agreement, executed while he was still employed with KSBE, released him from liability for any and all damages claimed by Peters in the suit. Alternatively, Aipa argued that all disputes should be committed to arbitration in accordance with the Settlement Agreement's arbitration provision. The Settlement Agreement's arbitration provision (set forth in paragraph 13 of the Agreement) provides, in relevant part:

> [T]he Parties agree that, if there is any dispute or disagreement among them regarding matters within the scope of this Agreement, said dispute or disagreement shall be decided by binding arbitration before the Arbitrators pursuant to Chapter 658 of the Hawaii Revised Statutes.

On September 1, 2005, Peters filed a memorandum in opposition to Aipa's Motion, arguing that the Settlement Agreement only extended to claims related to the civil and probate matters, and not claims arising from the criminal proceedings, wherein Aipa allegedly breached his duty of confidentiality.

At a hearing on September 12, 2005, the Circuit Court found questions of material fact existed as to (1) whether Aipa and Peters had an attorney-client relationship, and (2) whether those claims have been released under the Settlement Agreement. On December 7, 2005, the court entered the Order denying Aipa's Motion. Aipa filed a timely notice of appeal on January 5, 2006.

## II. POINTS OF ERROR

Aipa raises two points of error on this appeal:

(1) The Circuit Court erred as a matter of law in denying Aipa's motion for summary judgment, because Peters explicitly released Aipa from liability in the express provisions of the Settlement Agreement; and, in the alternative,

(2) The Circuit Court erred as a matter of law in denying Aipa's motion to compel arbitration in accordance with the Settlement Agreement with Peters.

## III. STANDARDS OF REVIEW

We review a circuit court's grant or denial of summary judgment de novo under the same standard applied by the circuit court. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 104, 839 P.2d 10, 22 (1992) (citation omitted). As we have often articulated:

> [s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Roxas v. Marcos,* 89 Hawai'i 91, 116, 969 P.2d 1209, 1234 (1998) (quoting *Estate of Doe v. Paul Revere Ins. Group,* 86 Hawai'i 262, 269–70, 948 P.2d 1103, 1110–11 (1997)) (internal citations and quotation marks omitted).

An order denying a petition to compel arbitration is also reviewed de novo. *Dines v. Pac. Ins. Co., Ltd.,* 78 Hawai'i 325, 326, 893 P.2d 176, 177 (1995); *see also Shimote v. Vincent,* 80 Hawai'i 96, 99, 905 P.2d 71, 74 (App.1995). The standard is the same as that which would be applicable to a motion for summary judgment, and the trial court's decision is reviewed "using the same standard employed by the trial court and based upon the same evidentiary materials as were before [it] in determination of the motion." *Koolau Radiology, Inc. v. Queen's Med. Ctr.,* 73 Haw. 433, 439–40, 834 P.2d 1294, 1298

(1992) (citation and internal quotation marks omitted); *Brown v. KFC Nat'l Mgmt. Co.,* 82 Hawai'i 226, 231, 921 P.2d 146, 151 (1996).

## IV. DISCUSSION

 Aipa's request for summary judgment and his request to compel arbitration were both based on the Settlement Agreement. As noted in the Background section above, Aipa is, as a matter of law, entitled to rely on the release in the Settlement because, *inter alia,* Peters alleged in the Complaint that Aipa was an employee of KSBE and attorney for KSBE. The dispositive determination on the summary judgment issue is, however, whether the claims at bar are within the scope of the release in the Settlement Agreement.[4] Similarly, but not identically, the dispositive issue on the request to compel arbitration is whether the claims are within the scope of the agreement and, thus, Aipa can rely on the arbitration provision included in the Settlement Agreement.

 Before considering these issues further, we must address Peters's contention that this court lacks appellate jurisdiction over this case. Peters argues that the Circuit Court's Order, in particular its denial of summary judgment, is not a final appealable order. Hawaii Revised Statutes (**HRS**) § 641–1(a)(1993) authorizes appeals only from "final judgments, orders, or decrees[.]" *Ciesla v. Reddish,* 78 Hawai'i 18, 20, 889 P.2d 702, 704 (1995) (citation omitted). "Judgment is not final in a case until all claims of the parties have been terminated." *Id.* Under the collateral order doctrine, however, an interlocutory order may be so effectively "final" that the exercise of appellate jurisdiction is proper. *Abrams v. Cades, Schutte, Fleming & Wright,* 88 Hawai'i 319, 321, 966 P.2d 631, 633 (1998).

 On appeal, Aipa cites *Ass'n of Owners of Kukui Plaza v. Swinerton & Walberg Co.,* 68 Haw. 98, 705 P.2d 28 (1985), wherein the Hawai'i Supreme Court held that "an order denying an application made in accord with HRS § 658–5 for a stay of proceedings until arbitration has been had and one denying an application filed pursuant to HRS § 658–3 [5] for an order directing that arbitration proceed in the manner provided in a written agreement are appealable orders within the

---

4. At the September 12, 2005 hearing, the Circuit Court found questions of fact existed as to whether there was an attorney-client relationship between Peters and Aipa, and whether the Settlement Agreement would cover that relationship. In other words, the court found that although the Settlement Agreement extended to the parties and their respective Representatives, including attorneys, it might not extend to a party's own attorney if that attorney was counsel to another party. The Settlement Agreement contains no such limitation and there is no assertion that Aipa was not an employee of and attorney to KSBE and, under Peters's theory, the other former trustees, who were also parties to the Settlement Agreement. The definition of "Representatives" is sweepingly broad, specifically including "the party's or parties' (as the case may be) ... attorneys." In addition, the Settlement Agreement, in paragraphs 3 and 7, specifically carved out, preserved, and assigned to KSBE, claims against certain enumerated and individually identified law firms and lawyers. There is no parallel provision carving out and preserving any claims that Peters had or may have against Aipa. The supreme court has held that "a court should look no further than the four corners of the document to determine whether an ambiguity exists. The parties' disagreement as to the meaning of a contract or its terms does not render clear language ambiguous." *Stanford Carr Dev. Corp. v. Unity House, Inc.,* 111 Hawai'i

285, 298, 141 P.3d 459, 471 (2006) (brackets, citations, and internal quotation marks omitted). Thus, the dispositive issue on the summary judgment part of Aipa's motion was whether the claims in this case are within the scope of the release.

5. In relevant part, HRS § 658–3 (1993) provided:

**Compelling compliance with agreement; jury trial when.** A party aggrieved by the failure, neglect, or refusal of another to perform under an agreement in writing providing for arbitration, may apply to the circuit court for an order directing that the arbitration proceed in the manner provided for in the agreement. If the making of the agreement or the default is in issue, the court shall proceed summarily to the trial thereof.

We note that in 2001, the legislature enacted new arbitration statutes codified as HRS chapter 658A (Uniform Arbitration Act), replacing HRS chapter 658 (Arbitration and Awards). 2001 Haw. Sess. L. Act 265, Section 5 at 820 (repealing HRS chapter 658); 2001 Haw. Sess. L. Act 265, §§ 1–29 at 810–20 (enacting HRS chapter 658A). HRS chapter 658A, however, is applicable to agreements to arbitrate made on or after July 1, 2002. HRS § 658A–3. Thus, as the Settlement Agreement was signed in 2000, HRS chapter 658A is not applicable.

contemplation of HRS § 641–1(a)." *Id.* at 1067 705 P.2d at 35. The supreme court held these orders fell within a "small class" of orders that were appealable because "the rights conferred by HRS § 658, if applicable, [would be] lost, probably irreparably" if the party was required to wait until final judgment to effectively review the order. *Id.* at 106, 705 P.2d at 34 (citations omitted). Thus, the Order, to the extent that it denied Aipa's request to compel arbitration, is subject to appellate review.

In his answering brief, Peters argues that the Circuit Court correctly rejected Aipa's request for arbitration:

> By its own terms, the arbitration provision only applies to disputes arising within the scope of the Settlement Agreement. Due to the fact that the claims in the present case fall outside of the scope of the Settlement Agreement, that agreement's arbitration provision does not apply.

. . .

> As it is ambiguous whether or not the Settlement Agreement and its provision to arbitrate apply to Peters' [sic] claims in this case, summary judgment is inappropriate here. . . . The arbitration provision does not apply for the same reasons that this case is outside the scope of the Settlement Agreement.

Arbitration would be mandatory in this case if: (1) Aipa is released under the terms of the Settlement Agreement; and (2) the claims in this case are within the scope of the release.[6] We have concluded already that Aipa is a beneficiary of the release in the Settlement Agreement. We must, therefore, consider the scope of the release.

■ Whether this case is, as Peters asserts, outside of the scope of the Settlement Agreement, hinges on whether Peters's claims against Aipa stemming from the grand jury proceedings are "relating to, concerning, involving or arising out of the Surcharge Claims." *See* paragraph 3., 3.a., & 3.b. of the Settlement Agreement, quoted above. Any and all claims "of every kind and every nature whatsoever, whether in law or in equity, whether known or unknown, arisen, arising or to arise in the future which concern or relate, directly or indirectly," to any claims relating to the Surcharge Claims were released.

In 2006 (after the Circuit Court entered the Order), the Hawai'i Supreme Court held, in affirming *summary judgment* in favor of the AG and its Representatives and against Peters's co-trustee Richard Wong, on this same Settlement Agreement:

> The question presented is whether the scope of the release in the Settlement Agreement includes the instant claims for malicious prosecution. We address it as a question of law because the construction and interpretation of settlement agree-

6. We note that the arbitration provision, set forth in paragraph 13 of the Settlement Agreement, states that "the *Parties* agree that, if there is any dispute or disagreement *among them* regarding matters within the scope of this Agreement, said disputes shall be decided by binding arbitration." (Emphasis added.) Peters has not, however, argued to this court or the court below that, as a non-party to the Settlement Agreement, Aipa may not invoke the Agreement's mandatory arbitration provision. Thus, this argument is waived. *See* Hawai'i Rules of Appellate Procedure Rule 28(b)(7); *see also, e.g., Wright v. Home Depot U.S.A., Inc.,* 111 Hawai'i 401, 408, 142 P.3d 265, 272 (2006); *Bitney v. Honolulu Police Dept.,* 96 Hawai'i 243, 251, 30 P.3d 257, 265 (2001). Indeed, in *Luke v. Gentry Realty, Ltd.,* 105 Hawai'i 241, 247, 96 P.3d 261, 267 (2004), the Hawai'i Supreme Court set forth a rule that, under certain specified circumstances, a non-signatory may invoke an arbitration agreement against a signatory. The rule set forth in *Luke* that a non-

signatory may invoke an arbitration agreement against a signatory in this manner is subject to two alternative conditions: first, the signatory must rely on the terms of the written contract in asserting claims against the non-signatory, thus using the contract as a weapon against the non-signatory in a manner that gives the non-signatory standing to invoke other terms in that contract; and second, a signatory to a contract with an arbitration provision raises allegations "of substantially interdependent and concerted misconduct by both the non[-]signatory and one or more of the signatories to the contract." *Id.* Although the first ground would not apply in this case, arguably, Peters is raising allegations that are substantially intertwined with the claims that were settled between the signatories to the Settlement Agreement. A party who enjoys the rights and benefits under an agreement should not be allowed to avoid its burdens and obligations. *Id.* at 248, 96 P.3d at 268.

ments, which are simply a species of contract, is generally a matter for the court.... Furthermore, when the terms of a contract are definite and unambiguous there is no room for interpretation.... *Here, we are left with no room for interpretation because the language of the Settlement Agreement is unambiguously sweeping and broad.* The agreement states that it releases all claims, whether *known or unknown*, arisen, arising or *to arise in the future* and which concern or relate, *directly or indirectly*, to any or all of the following: all claims relating to, concerning, involving or arising out of the Surcharge Claims. Because the agreement clearly releases unknown and unarisen claims, whether any or all of Richard [Wong]'s claims for malicious prosecution were known or arisen as of October 12, 2000 is irrelevant. Furthermore, we do not doubt that the malicious prosecution claims here are directly or indirectly related to the surcharge claims in the probate case.

 . . . .

... Even more telling is that both the criminal [grand jury] proceedings and civil probate [surcharge] proceedings concerned the same subject matter. That is to say, the alleged sweetheart deal regarding Kalele Kai and surrounding allegations of financial improprieties in the probate case also form the subject of the [criminal indictments]. Accordingly, we hold that Richard [Wong], by entering into the Settlement Agreement, released any malicious prosecution claims against the Attorney General and his or her Representatives (*i.e.,* agents, attorneys, and employees). Because there is no dispute that, with the exception of Cayetano, each of the Defendants in this action were either the attorney general, or a Representative of the attorney general, the [summary] judgment below must be affirmed in their favor and against Richard [Wong].

*Wong v. Cayetano*, 111 Hawai'i 462, 481–82, 143 P.3d 1, 20–21 (2006) (emphasis added; citations, internal quotation marks, ellipsis, and footnotes omitted; italics in the original). The claim that Aipa breached duties to Peters by providing grand jury testimony in the criminal proceedings is, likewise, related to the surcharge proceedings. Thus, Peters's assertion that his claims in this case fall outside the scope of the Settlement Agreement is without merit.[7] Accordingly, we vacate and remand the Circuit Court's Order with respect to the denial of the motion to compel arbitration.

 ■■■■ Although we have concluded that the denial of Aipa's motion to compel arbitration was appealable, that portion of the order denying Aipa's motion for summary judgment is not necessarily appealable simply because the two underlying requests are related and brought within a single motion. *See Ass'n of Owners of Kukui Plaza*, 68 Haw. at 105, 705 P.2d 28, 33 ("The right of appeal is purely statutory and exists only when given by some Constitutional or statutory provision.") (citation and internal quotation marks omitted); *see also Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 209 (3rd Cir.1990) ("a single order is not appealable in its entirety just because a portion of that order is appealable") (citation omitted); *Schaff v. Kennelly*, 69 N.W.2d 777, 779 (N.D.1955) ("Insofar as respondent's motion to dismiss this appeal is concerned, it makes no difference that the three motions were denied in a single order rather than several orders, because an order appealable in part and nonappealable in part will present for review that part which is appealable.") (citations omitted). Indeed, in *Jen-*

---

**7.** The conclusion that *all* claims against KSBE employees, including in-house attorneys like Aipa who may have had an attorney-client relationship with Peters and/or other trustees, is further supported by the Settlement Agreement's carve-out from the release (in paragraph 3, quoted above) for claims against outside attorneys, law firms and consultants, who were then specifically identified in paragraph 7 of the Settlement Agreement (which assigned any and all such claims to KSBE). Paragraph 5 of the Settlement Agreement addresses, *inter alia*, various issues related to the payment of attorneys' fees incurred in the criminal proceedings. Clearly, had the parties intended to preserve particular claims against Aipa relating to his testimony in the criminal proceedings, they could have done so explicitly, as they did in a variety of other instances in the Settlement Agreement. *See supra* note 4.

*kins v. Cades Schutte Fleming & Wright,* 76 Hawai'i 115, 119–20, 869 P.2d 1334, 1338–39 (1994), the Hawai'i Supreme Court clearly ruled that, absent certification under Hawai'i Rules of Civil Procedure (**HRCP**) Rule 54(b) or applicability of the collateral order doctrine, an appeal may be taken from circuit court orders only after the orders have been reduced to judgment. Aipa has not cited any authority, except as to judicial economy, supporting appellate jurisdiction over the order granting the motion for summary judgment and we find these cases to be persuasive, particularly in light of the "bright line" established in *Jenkins. Id.* We hold that, under Hawai'i law, a single order is not appealable in its entirety just because a portion of that order is appealable.

There was no order allowing an appeal from the denial of summary judgment in this case. *See* HRS § 641–1(b) (1993). There does not appear to be any other basis for appellate jurisdiction over the denial of summary judgment. Thus, we hold that the Circuit Court's order was appealable in part but nonappealable as to the ruling on summary judgment.

## V. *CONCLUSION*

For the reasons set forth above, we vacate the Circuit Court's Order as to the denial of Aipa's request to compel arbitration, dismiss this appeal, without prejudice, as to the denial of summary judgment, and remand this case to the Circuit Court for further proceedings consistent with this Opinion.